**David M. LANDAY and Patberg Carmody & Ging, Appellants**

v.

**RITE AID, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 10, 2010.
Filed March 23, 2012.

Paul A. Lagnese, Pittsburgh, for appellants.

Carl A. Solano, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

David M. Landay and the law firm of Patberg Carmody & Ging (collectively "Appellants") appeal from the order entered on May 5, 2011 in the Allegheny County Court of Common Pleas that granted the preliminary objections filed by the appellee, Rite Aid, and dismissed Appellants' complaint. For the reasons that follow, we reverse and remand for further proceedings.

On March 24, 2010, Appellants filed a class action complaint against Rite Aid. Complaint, 3/24/10. In the complaint, Appellants claim that Rite Aid violated Pennsylvania law and breached its contracts with Appellants by charging a flat fee of $50.00 for reproducing pharmacy records. *Id.* More specifically, Appellants allege that, under Pennsylvania law, Rite Aid is only permitted to charge requestors of pharmacy records "for the estimated actual and reasonable expenses it incurs in connection with the reproduction of requested pharmacy records" and that "charging each requestor a flat fee of $50.00 has no relationship to [Rite Aid's] actual costs of searching for, retrieving, reproducing and transmitting Pennsylvania pharmacy records." *Id.* at ¶¶ 15, 16. Rite Aid filed preliminary objections on the grounds that there was no breach of contract with Appellants and that there was no violation of the Pennsylvania Medical Records Act ("MRA"), 42 Pa.C.S.A. §§ 6151–6160. Preliminary Objections, 5/11/10. Rite Aid asserted that the MRA does not apply to pharmacy records. *Id.*

---

* Retired Senior Judge assigned to the Superior Court.

In an order filed May 5, 2011, the trial court granted Rite Aid's preliminary objections and dismissed Appellants' complaint. Interpreting the terms of the MRA restrictively, the trial court concluded that the MRA did not apply to pharmacies because a customer of a pharmacy was not a "patient." Trial Court Opinion, 5/5/11, at 6.[1] Additionally, the trial court found that Appellants' complaint did not set forth facts supporting a breach of contract action. *Id.* at 8. Appellants timely appealed.

On appeal, Appellants raise two issues:

1. Whether the Medical Records Act, 42 Pa.C.S.A. §§ 6151–61[60], applies to Pennsylvania pharmacies, thereby restricting the amounts they may charge their patients and patient designees, including attorneys, for copies of requested pharmacy records?

2. Whether the relevant provisions of the Medical Records Act, 42 Pa. C.S.A. §§ 6151–61[60], are incorporated as terms into the records copying contracts between [Appellants] and Rite Aid?

Appellants' Brief at 4.

 The standard of review we apply when reviewing a trial court's order granting preliminary objections in the nature of a demurrer is well settled.

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Wayne M. Chiurazzi Law Inc. v. MRO Corporation,* 27 A.3d 1272, 1277 (Pa.Super.2011) (citations and quotation marks omitted).

 Additionally, because we must determine whether an individual who obtains pharmacy records from a pharmacy is a "patient," as well as whether the pharmacy records are "medical charts and records" and whether the pharmacy is a "health care provider" or "health care facility" under the MRA, we are deciding questions of law. It is well settled that this Court's standard of review for questions of law is *de novo,* and our scope of review is plenary. *Cash America Net of Nevada, LLC v. Com., Dept. of Banking,* 607 Pa. 432, 443, 8 A.3d 282, 289 (2010).

The MRA provides that:

(1) A patient or his designee, including his attorney, shall have the right of access to his medical charts and records and to obtain photocopies of the same, without the use of a subpoena duces tecum, for his own use. A health care provider or facility shall not charge a patient or his designee, including his attorney, a fee in excess of the amounts

---

1. The trial court conceded, however, that if the MRA applied to pharmacies, the flat fee charges "would appear to have no relationship to charges permitted under the MRA." Trial Court Opinion, 5/5/11, at 7 n. 4.

set forth in section 6152(a)(2)(i) (relating to subpoena of records).

42 Pa.C.S.A. § 6155(b)(1).

■ As the trial court noted:

If § 6155(b) applies to pharmacies, the fees charged by the pharmacies, as alleged in the complaints, exceed the amounts set forth in § 6152(a)(2)(i).

The provisions of § 6155(b)(1) setting the maximum fees that may be charged applies to "patients" requesting their "medical charts and records" from a "health care provider or facility." The MRA does not define the terms "patient," "medical charts and records," or "health care provider or facility."

In [Appellants'] Brief in Opposition to the preliminary Objections of [Rite Aid], [Appellants] state that this absence of definition triggers the application of § 1903 of the Statutory Construction Act which provides that where terms are not otherwise defined in a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; ..." 1 Pa.C.S. § 1903(a). [Appellants] also refer to 1 Pa.C.S.A. § 1921 which provides that a court may not consider other statutes upon the same or similar subjects unless the words of a statute are not explicit. [Appellants] state that "[Rite Aid] ignore[s] these precepts of statutory interpretation and attempt[s] to find an exception from the MRA for pharmacies through reference to other Pennsylvania statutes, yet they fail to demonstrate any ambiguity in the terms at issue." [Appellants'] Brief at 6.

Trial Court Opinion, 5/5/11, at 3. The trial court continued:

Both [Appellants] and [Rite Aid] discuss other legislation and regulations. [Appellants] correctly state that legislation and regulations governing the practice of pharmacy require a pharmacist, before filling a prescription, to exercise professional judgment by, *inter alia*, considering potential adverse reactions, and whether the prescription may have an incorrect duration or dosage. [Appellants] refer to laws, such as HIPPA [sic] and the Pennsylvania Quality Health Care and Accountability and Protection Act, 40 P.S. § 991.2102, that include pharmacists in the description of health care providers that come within the scope of the law.

[Rite Aid] cite[s] other state laws governing health care providers that do not include pharmacies and pharmacists in the definition of health care providers.

[Rite Aid] also find[s] to be significant the difference between medical records kept by a hospital and the records of the pharmacy. The medical records of a hospital can be voluminous. They document the course of the patient's condition and treatment. The pharmacy records, on the other hand, usually consist of a list of the prescriptions filled by the pharmacy. They duplicate what was already furnished at the time of delivery. Unlike a hospital record, they do not provide any information as to the medication actually taken.

Trial Court Opinion, 5/5/11, at 3–4.

The trial court concluded its analysis on this issue by stating:

I find that the other legislation cited by the parties and the history of this legislation do not offer any guidance as to whether the Legislature intended for § 6155(b) of the MRA to apply to pharmacy records. Consequently, I base my ruling on the language of § 6155(b).

Section 6155(b) governs only a "patient" who seeks his or her medical charts and records. Thus, this provision governs only persons who would, under ordinary usage of the term, describe themselves as a patient. For example, a person receiving services provided by a

psychologist would refer to himself or herself as a patient of the psychologist. However, a person receiving services provided by a licensed yoga instructor would not refer to himself of herself as a patient of the yoga instructor.

The latter example also applies to describe the relationship between the person obtaining a prescription from a pharmacy and the pharmacy. Under ordinary usage, persons describe themselves as patients of the physician who wrote the prescription and customers of the pharmacy that filled the prescription. Persons describe themselves as patients of a hospital but persons do not describe themselves as patients of a pharmacy.

[Appellants] argue that the Legislature intended for § 6155(b) to apply if a pharmacy can be characterized as a health care facility and if its records may be characterized as medical charts or records. This would be so if § 6155 had used the term person. However, it used a more restrictive word—patient.

I recognize that I cannot construe legislation based on the ordinary usage of the word if it produces a result that the Legislature could not have intended. However, by using the term patient, the Legislature was focusing on problems concerning access to the records of hospitals and physicians. I have no reason to believe the same problems existed with respect to records of pharmacies.

Trial Court Opinion, 5/5/11, at 5–6.

After careful review, we are constrained to disagree with the trial court's conclusion. First of all, we fail to see any ambiguity in the term "patient." It is commonly understood that a person for whom a medication has been prescribed by a licensed health care provider is a patient. Nothing in the MRA requires that such a person be a patient of the pharmacy, as the trial court implies by its restrictive definition. However, we would not consider it erroneous to deem such an individual a patient of the dispensing pharmacist, who either owns or works for the pharmacy, as well as the prescribing health care provider.

This view is supported by the Pharmacy Act, 63 P.S. §§ 390–1–390–13, in which the Legislature defines the terms pharmacy and the practice of pharmacy as follows:

(10) "Pharmacist" means an individual duly licensed by the State Board of Pharmacy to engage in the practice of pharmacy.

(11) "Practice of pharmacy" means the **provision of health care services by a pharmacist,** which includes the interpretation, evaluation and implementation of medical orders for the provision of pharmacy services or prescription drug orders; the delivery, dispensing or distribution of prescription drugs; participation in drug and device selection; drug administration; drug regimen review; drug therapy management, including such services provided under the Medicare Prescription Drug, Improvements, and Modernization Act of 2003 (Public Law 108–173, 117 Stat.2066); drug or drug-related research; compounding; proper and safe storage of drugs and devices; management of drug therapy pursuant to section 9.3 or, if in an institutional setting, consistent with the institution's assignment of clinical duties pursuant to a written agreement or protocol as set forth in section 9.1; maintaining proper records; **patient** counseling; and such acts, services, operations or transactions necessary or incident to the **provision of these health care services.** The "practice of pharmacy" shall not include the operations of a manufacturer or distributor as defined in "The Controlled Substance, Drug, Device and Cosmetic Act."

63 P.S. §§ 390–2(10) and (11) (emphasis added) (footnotes omitted). We specifically note that, as part of their health care duties, pharmacists are authorized to administer injectable medications, biologicals, and immunizations. 63 P.S. § 390–9.2. Thus, the practice of pharmacy is not limited to filling prescriptions. As summarized above, it includes, *inter alia,* the provision of many other health care services to patients.

Moreover, the Pennsylvania Code sets forth the specific duties of pharmacists to their patients. These include the creation and maintenance of independently produced records, as detailed below:

Prospective drug review and **patient counseling.**

(a) PDR Required. A pharmacist shall perform a PDR before filling, delivering or sending a new prescription or drug order, except when a physician dispenses a drug to a patient being treated in the emergency room. The PDR requires that the pharmacist review a **profile of the patient maintained in the pharmacy** in accordance with subsection (f) prior to dispensing the medication to the patient or caregiver.

(b) Purpose. The purpose of the PDR is to help assure that a drug dispensed under a prescription is not likely to have an adverse medical result. The PDR accomplishes this by attempting to identify potential drug therapy problems that might result from therapeutic duplication, drug-drug interactions, incorrect dosage, incorrect duration of drug treatment, drug-allergy interactions, and clinical abuse or misuse.

(c) Scope.

(1) The PDR is required for prescriptions and drug orders.

(2) The following are examples of situations in which a PDR is required:

(i) A patient visits a physician in the physician's office and receives a prescription. The patient has the prescription filled in a retail pharmacy.

(ii) A pharmacist fills a prescription for a patient who lives in a personal care home.

(iii) A pharmacist in a hospital pharmacy fills an outpatient prescription for a hospital employee.

(iv) A patient is treated on a non-emergency basis in an outpatient clinic of a hospital and is given a prescription. The patient has the prescription filled either in the hospital pharmacy or in a retail pharmacy.

(v) A pharmacist fills a prescription for a patient in a nursing home.

(iv) A pharmacist in a hospital dispenses a drug which will be administered to a patient in the hospital.

(3) The following are examples of situations in which a PDR is not required:

(i) A physician dispenses a drug to a patient being treated in the emergency room.

(ii) A pharmacist dispenses a radio-pharmaceutical to a physician who will administer it to a patient.

(iii) A medical practitioner dispenses a drug.

(iv) A pharmacist dispenses a drug to a medical practitioner which the practitioner will administer to a patient.

(d) Offer to counsel.

(1) An offer to counsel shall be made to each patient or caregiver when the pharmacist fills, delivers or sends a new retail or outpatient prescription.

(2) The pharmacist or designee of the pharmacist shall orally make the offer in person if a patient or caregiver comes to the pharmacy. If the phar-

macist in the exercise of professional judgment in the interest of a patient believes that an oral offer would be less effective than a written offer, the pharmacist may substitute a written offer. The following are examples of situations in which a pharmacist might substitute a written offer:

(i) The patient or caregiver is hearing impaired.

(ii) The patient or caregiver is not an English speaker.

(3) If neither the patient nor caregiver comes to the pharmacy, the offer to counsel shall be made in one of the following ways:

(i) The pharmacist or designee may telephone the patient or caregiver.

(ii) The pharmacy delivery person may orally make the offer to the patient or caregiver.

(iii) The pharmacist may send a written offer to counsel together with the filled prescription which is delivered or sent to the patient.

(4) A written offer to counsel must include the telephone number of the pharmacy.

(5) A pharmacy shall provide toll-free telephone service if its primary patient population is beyond the local or toll-free exchange.

(6) A mail order pharmacy shall make the offer to counsel either by telephone or by sending a written offer together with the filled prescription. The written offer must include a toll-free telephone number of the pharmacy which a patient or caregiver may use to obtain counselling.

(7) The obligation to make an offer to counsel will be fulfilled by making one offer in accordance with this subsection.

(e) Counselling.

(1) Only a pharmacist may counsel.

(2) If a patient or caregiver who comes to the pharmacy indicates that he wants counselling, the pharmacist shall counsel the patient or caregiver in person, or, at the discretion of the patient or caregiver, by telephone.

(3) If the filled prescription is sent or delivered to the patient or caregiver, counselling shall be by telephone.

(4) The following are examples of matters which a pharmacist in the exercise of professional judgment might deem significant and discuss with the patient or caregiver:

(i) The name and description of the medication.

(ii) The route of administration, dosage form and duration of drug therapy.

(iii) Special directions and precautions for preparation, administration and use by the patient.

(iv) Common severe side effects or interactions and therapeutic contraindications that may be encountered, including their avoidance, and the action required if they occur.

(v) Techniques for self-monitoring drug therapy.

(vi) Proper storage.

(vii) Prescription refill information.

(viii) Action to be taken in the event of a missed dose.

(5) If a pharmacist discovers a specific problem with a medication during the course of a PDR, the pharmacist shall intervene to attempt to resolve the problem.

(f) **Patient profile.**

(1) The pharmacist or designee of the pharmacist shall make a reasonable effort to obtain, record and maintain the following information about each patient:

(i) The name, address, telephone number, date of birth (or age) and gender.

(ii) Individual history, if significant, including known allergies and drug reactions, and a list of medications and relevant devices, as provided by the patient or caregiver.

(iii) Pharmacist comments relative to the individual's drug therapy.

(2) The patient profile may be maintained electronically or manually.

(3) The pharmacist or designee of the pharmacist shall begin a patient profile when the pharmacist fills a prescription for a new patient or for a current patient for whom a profile had not previously been maintained.

(4) The patient profile shall be maintained for at least 2 years after the last entry.

(5) The Board will consider a single request for information for a patient profile made to a patient or caregiver a reasonable effort to obtain the information outlined in this subsection.

(g) Refusal to accept counselling or to provide information.

(1) A pharmacist is not required to provide counselling or obtain information for the patient profile if the patient or caregiver refuses the offer to counsel or refuses to divulge information for the patient profile. If a patient or caregiver fails to respond to an offer to counsel or a request for information, the failure to respond will be deemed a refusal.

(2) The pharmacist or designee shall document the refusal of a patient or caregiver to accept counselling or provide information. The documentation must include the name or initials of the pharmacist or designee noting the refusal. The following kinds of documentation are acceptable:

(i) A notation made by the pharmacist or designee on the prescription or patient profile or the electronic records of the pharmacy.

(ii) A writing signed by the patient or caregiver.

(h) Confidentiality.

(1) Information gained by a pharmacist, pharmacy or employee of a pharmacy about a patient under this section shall be regarded as confidential. The information shall be maintained in accordance with section 8(10) of the act (63 P.S. § 390–8(10)).

(2) The pharmacist or pharmacy may reveal the information if one of the following circumstances occurs:

(i) The patient consents to the disclosure.

(ii) The Board or its authorized agents require the information for any proceeding under the act.

(iii) State or Federal law or regulations require or authorize the disclosure.

(iv) A court orders the disclosure.

49 Pa.Code § 27.19 (emphasis added).

The language utilized in the Code, as well as the Pharmacy Act, reflects that the pharmacist is a health care provider and that the recipient of the prescription medication is a patient. The Code use of the term "patient profile," the requirement that the pharmacist maintain and review the profile, the duty to provide counseling, and the importance of maintaining confidentiality of all information compiled support the conclusion that the pharmacy records are medical records of a patient. A pharmacist is not merely an intermediary between a vendor and consumer. Rather, as noted above, a pharmacist is required to utilize his or her professional education, training, and judgment to provide health care to patients.

It is for these reasons we conclude that, under the MRA, a pharmacist is a health care provider, an individual to whom prescription medication is dispensed is a patient, and the patient pharmacy records maintained by the pharmacist are medical records. Accordingly, we hold that the MRA applies to pharmacies. However, our analysis is not concluded as the trial court purported to offer a second rationale for granting the preliminary objections.

In Appellants' second issue, it is averred that the trial court erred in granting Rite Aid's preliminary objections based on its conclusion that, even if the MRA applies to pharmacies, Appellants' complaint does not set forth a breach of contract cause of action. More specifically, the trial court ruled that the MRA was not part of Appellants' pharmacy records acquisition contracts with Rite Aid. Trial Court Opinion, 5/5/11, at 6–8. Pursuant to our standard of review, we are constrained to also disagree with the trial court's conclusion on this issue.

As noted above, we have concluded that the MRA applies to the reproduction of pharmacy records. Thus, because the MRA applies, it became part of the contracts between Appellants and Rite Aid.

As this Court stated in *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 937 A.2d 503 (Pa.Super.2007), *affirmed, Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 983 A.2d 652 (2009):

It is well settled that "[t]he laws that are in force at the time the parties enter into a contract are merged with the other obligations that are specifically set forth in the agreement." *Empire Sanitary Landfill, Inc. v. Commonwealth, Department of Environmental Resources,* 546 Pa. 315, 340, 684 A.2d 1047, 1059 (1996). *See also: DePaul v. Kauffman,* 441 Pa. 386, 398, 272 A.2d 500, 506 (1971). Here, there is no dispute that

the Medical Records Act was in force at the time Recordex invoiced the class members for the copying of medical records relevant to this dispute. Therefore, the trial court properly concluded that the billing limitations set forth in the Act were implicitly included in any agreement entered into by the parties. To conclude otherwise would render the billing limitations prescribed by the legislature meaningless.

*Liss & Marion, P.C.,* 937 A.2d at 512. Thus, the same is true here. Because the MRA was in force at the time Appellants contracted with Rite Aid, the terms of the MRA became part of the contracts.

Rite Aid argues that, even if the MRA applies, the parties were free to negotiate their own terms pursuant to 42 Pa.C.S.A. § 6152(a)(2). Rite Aid's Brief at 7. While we agree with Rite Aid that the parties were free to negotiate their own terms, there is no indication of negotiation here.

We further note our disagreement with Rite Aid's argument that Appellants approved and voluntarily made payment on these invoices, thus vitiating their right to recover under the voluntary payment doctrine. Rite Aid's Brief at 5. This Court has defined the voluntary payment doctrine as follows: "Where, under a mistake of law, one voluntarily and without fraud or duress pays money to another **with full knowledge of the facts,** the money paid cannot be recovered ..." *Chiurazzi,* 27 A.3d at 1281 n. 4 (citation omitted) (emphasis added).

In the case at bar, we cannot conclude that there was full knowledge of the facts. In *Chiurazzi,* the voluntary payment doctrine was discussed when this Court addressed the fees charged for reproduction of records on CD–ROM. *Chiurazzi,* 27 A.3d at 1281. However, in that case, the fees charged for records that were over 100 pages and the fact that such a record

would be reproduced on CD–ROM as opposed to paper were explicit.

Here, unlike *Chiurazzi,* there were no terms on the invoice and no itemization. The invoice merely used boilerplate language and the generic terms: "RESEARCH & PREPARATION OF FILES, CLERICAL EXPENSES, PHOTOCOPYING EXPENSES AND POSTAGE & HANDLING" and listed a $50.00 fee. Invoices, 12/3/08 and 12/4/08 (full capitalization in original). Therefore, unlike *Chiurazzi,* where the terms were explicit and specific, the voluntary payment doctrine does not apply in the instant case.

For the reasons set forth above, we reverse the order granting Rite Aid's preliminary objections and dismissing Appellants' complaint, and we remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.