## Eastern Roofing Systems, Inc. v. Cestone

C.P. of Lackawanna County, No. 08 CV 8764.

*John L. Siejk and Paul G. Batyko,* for plaintiff.
*James M. Tressler,* for defendants.

NEALON, *J.*, April 13, 2012—A roofing contractor has filed two lawsuits against a local businessman, his residential construction firm and an industrial building construction company, and asserts contract, quasi-contract, statutory and tort claims against them for unpaid invoices relating to work it performed on eight construction projects. Defendants have filed preliminary objections demurring to the contractor's claims for promissory estoppel, fraud, and negligent misrepresentation in both cases, as well as the individual businessman's personal liability in the second suit involving the commercial construction company.

The contractor has alleged a valid claim for promissory estoppel as an alternative form of relief to its breach of contract claim. Since the contractor's fraud claim in the first action is based upon the defendants' contractual obligation to pay for roofing services, it is barred by the gist of the action doctrine. However, the roofing contractor's fraud in the inducement claims in the second suit are not dependent upon any contractual duties, and as such, are not precluded by the gist of the action doctrine. The fraudulent inducement claims involve extra-contractual promises that the defendants allegedly had no intention of keeping when they made them, such that they may be actionable as fraud. Additionally, since the defendants were not engaged in the business or profession of providing information for pecuniary gain, and the contractor seeks economic damages only, the contractor has not stated a cause of action under section 552 of the restatement (second) of torts and its negligent misrepresentation claims are barred by the economic loss doctrine. Last, the defendant businessman who served as an officer of the commercial construction

company may be individually liable for damages under the participation theory based upon the allegations that he personally participated in the tortious and wrongful conduct in question.

## I. FACTUAL BACKGROUND

Plaintiff Eastern Roofing Systems, Inc., for itself and as successor to John Basalyga d/b/a Eastern Contracting Company ("Eastern Roofing"), has instituted two civil actions against defendant Michael G. Cestone ("Cestone") and two businesses which he allegedly owns or operates. In the first suit docketed to No. 08 CV 8764 (Lacka, Co.), Eastern Roofing seeks to recover compensatory damages from Cestone and defendant Cestone Custom Homes ("Custom Homes") for unpaid invoices totaling $11,090.00 for roofing and related services that Eastern Roofing provided in connection with the Sanctuary Townhomes project in Mountaintop, Luzerne County, Eastern Roofing has also sued Cestone and defendant S. G. Mastriani Construction Management, Inc. ("Mastriani Construction") in No. 08 CV 8765(Lacka. Co.) and claims damages for unpaid invoices of $102,251.70 for roofing services performed on the Mauch Chunk Train Station project in Jim Thorpe, the Dunmore Civic Center project, the Polk Elementary School project in Wilkes Barre, the Wilkes-Barre Housing Authority project, the Mill Street Housing Development project in Wilkes-Barre, the Sleep Inn pool project in Dunmore, and the 405 Vernard Road project in Lackawanna County. In both cases, Eastern Roofing has advanced eight causes of action for breach of contract, violation of the Contractor and Subcontractor Payment Act, unjust enrichment, *quantum meruit*, account stated, promissory estoppel,

fraudulent misrepresentation/inducement, and negligent misrepresentation.[1]

In the Custom Homes litigation, Eastern Roofing avers that it entered into a written subcontract agreement with Custom Homes in November 2006 and later provided three invoices dated August 30, 2007, September 15, 2007 and October 29, 2008 upon completing the subcontracted work. (Docket Entry No. 4, ¶¶6-7 in No. 08 CV 8764). Based upon Custom Homes' failure to pay those invoices totaling $11,090.00, Eastern Roofing has asserted a breach of contract claim against Cestone and Custom Homes. (*Id.*, ¶¶14-20). Due to Eastern Roofing's reported status as a "subcontractor" and Custom Homes' position as a "contractor" under section 2 of the contractor and Subcontractor Payment Act (CSPA), 73 P.S. §502, Eastern Roofing demands compensatory damages, 12% annual interest, and reasonable counsel fees pursuant to sections 504, 507 and 512 of the CSPA, 73 P.S. §§504, 507 and 512. (*Id.*, ¶¶22-28). Eastern Roofing alternatively seeks to recover in quasi-contract and advances claims for unjust enrichment and *quantum meruit*. (*Id.*, ¶¶30-33, 35-37).

In addition to asserting a cause of action for account stated in the Custom Homes action, (*Id.*, ¶¶39-42), Eastern Roofing has set forth claims for promissory estoppel, fraud and negligent misrepresentation which are the subject of the defendants' preliminary objections. In its promissory estoppel count, Eastern Roofing contends that "[i]n reasonable and justifiable reliance on defendant's

---

1. In count VI of the complaints filed in both actions, Eastern Roofing also set forth claims for violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq., but has agreed to voluntarily withdraw those claims.

repeated promises of payment in full, [Eastern Roofing] performed work for the defendant" which it "would not have performed... if not for defendant's promises and representations to pay the full balance due and owing to [Eastern Roofing]." (*Id.*, ¶¶54,56). Eastern Roofing's fraudulent misrepresentation claim in the Custom Homes suit is predicated upon Cestone's "numerous intentional and false" promises "to pay[Eastern Roofing] for the work it performed relative to the project." (*Id.*, ¶¶61). Eastern Roofing's cause of action for negligent misrepresentation is premised upon Cestone's "numerous negligent misrepresentations of material facts" comprised of "promising to pay [Eastern Roofing] for the work it performed relative to the project." (*Id.*, ¶68).

In the Mastriani Construction matter, Eastern Roofing alleges that it entered into a written contract with Mastriani Construction in May 2004 to perform work on the Mauch Chunk Train Station in Jim Thorpe. (Docket Entry No. 4, ¶¶8-10 in No. 08 CV 8765). In December 2004 and January 2005, Mastriani Construction approved change orders for Eastern Roofing to complete additional work that was not contained in the original contract. (*Id.*, ¶11). Eastern Roofing contends that "near the completion of [its] work relative to the Mauch Chunk project, John Basalyga, Principal of [Eastern Roofing], spoke to Cestone via telephone and requested payment" of the sums due and owing at that point. (*Id.*, ¶14). Eastern Roofing asserts that "[i]n a scheme of fraud and artifice and with the intention of inducing [Eastern Roofing] to perform other and additional work for [Cestone and Mastriani Construction], Cestone represented and promised [Eastern Roofing] that it would be paid for the work it

performed..., and Cestone represented that he was on the board of directors of a local bank and that he would make it worth [Eastern Roofing's] while if it waited on payment relative to the aforementioned change orders." (*Id.*, ¶15). "Specifically, Cestone represented and promised that he would provide [Eastern Roofing] with additional work and ensured [Eastern Roofing] that it would receive favorable financing, if ever needed, from the local bank relative to which Cestone represented [that] he served as a member of the board of directors." (*Id.*, ¶16).

Eastern Roofing submits that "[b]ased on the representations and promises of Cestone," it "agreed to delay its demand for payment of the sum of $17,811.00" owed on the Mauch Chunk project and further agreed to perform $12,630.70 worth of additional work on the Dunmore Civic Center project, as per six written change orders approved by Mastriani Construction between December 2005 and August 2006. (*Id.*, ¶¶18,21-23). Eastern Roofing also claims it is owed $9,500.00 under the subcontract agreement signed by the parties on May 13, 2005 in conjunction with the Polk Elementary School project, as well as $3,080.00 for extra work performed on that project pursuant to approved change orders dated January 18, 2006. (*Id.*, ¶¶24-29). Eastern Roofing further maintains that it is owed $33,200.00 on the Wilkes Barre Housing Authority project, $17,340.00 on the Mill Street Housing Development project, $5,890.00 on the Sleep Inn pool project, and $2,800.00 on the 405 Vernard Road project in accordance with the parties' subcontract agreements and approved change orders in 2006 and 2008. (*Id.*, ¶¶30-50).

On December 24, 2008, Eastern Roofing commenced

the Custom Homes and Mastriani Construction litigation by the filing of writs of summons. (Docket Entry Nos. 1 in Nos. 08 CV 8764 and 08 CV 8765). The writs were reissued on February 3, 2009 and served upon Cestone, Custom Homes and Mastriani Construction on February 18, 2009. (*Id.*, Nos. 2-3). Eastern Roofing did not file its complaints in the Custom Homes and Mastriani Construction cases until August 17, 2011. (*Id.*, Nos. 4). Eastern Roofing alleges in the Mastriani Construction complaint that it forwarded a statement to Mastriani Construction on January 28, 2009 demanding payment of its outstanding invoices for work performed on the Mauch Chunk Train Station, Dunmore Civic Center, Polk Elementary School, Mill Street Housing Development, Sleep Inn pool and 405 Vernard road projects, but that those invoices remain unpaid. (Docket Entry No. 4 in No. 08 CV 8765, ¶¶12-13, 22-23, 28-29, 40-41, 45-46, 49-50).

In the Mastriani Construction action, Eastern Roofing avers that Cestone is an officer and shareholder of Mastriani Construction and "personally and individually participated in the tortious and unlawful conduct described" in the Mastriani Construction lawsuit. (*Id.*, ¶¶5, 52). As in the Custom Homes case, Eastern Roofing has alleged causes of action against Cestone and Mastriani Construction for breach of contract, violation of the CSPA, unjust enrichment, quantum meruit, account stated and promissory estoppel. (*Id.*, ¶¶52-60,62-70,72-76,78-81, 83-87, 99-105). Unlike the Custom Homes litigation, the fraud and negligent misrepresentation claims against Cestone and Mastriani Construction are based upon the representations and promises allegedly made by Cestone

during his telephone conversation with Eastern Roofing's principal, John Basalyga, in late 2004. (*Id.*, ¶¶14-17, 107-112, 114-119).

Cestone and Custom Homes have filed preliminary objections in the nature of a demurrer to Eastern Roofing's claims for promissory estoppel, fraud and negligent misrepresentation. Cestone and Custom Homes submit that the promissory estoppel claim (Count VII) is "legally insufficient" in that Eastern Roofing has failed "to allege the essential element of damages accruing from reliance on a promise." (Docket Entry No. 8, ¶7 in No. 08 CV 8764). Cestone and Custom Homes demur to Eastern Roofing's fraud claim (count VIII) based upon the gist of the action doctrine and the common law precept that the "[m]ere breach of a promise to do something in the future is not actionable in fraud." (*Id.*, ¶¶8-9,14,16). Cestone and Custom Homes also seek to dismiss Eastern Roofing's negligent misrepresentation claim (count IX) pursuant to the economic loss doctrine. (*Id.*, ¶¶17-20).

Cestone has filed preliminary objections in the Mastriani Construction action, demurring to his individual liability for breach of contract, violations of the CSPA, unjust enrichment, quantum meruit, account stated and promissory estoppel in counts I to V and VII of the complaint. (Docket Entry No. 8, ¶¶2-27 in No. 08 CV 8765). Cestone and Mastriani Construction both demur to Eastern Roofing's fraud and negligent misrepresentation claims (counts VIII, IX) on the same grounds raised in the Custom Homes suit, i.e., the gist of the action doctrine, non-liability for the mere breach of a promise to do something in the future, and the economic loss doctrine. (*Id.*, ¶¶28-40). Consolidated oral argument on both sets

of preliminary objections was conducted on February 2, 2012, at the conclusion of which the defense demurrers were submitted for a decision.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. *Richmond v. McHale,* 35 A.3d 779, 783 (Pa. Super. 2012). The question presented by a demurrer "is whether, on the facts averred, the law says with certainty that no recovery is possible." *Betts Industries, Inc. v. Heelan,* 33 A.3d 1262, 1265 (Pa. Super. 2011). Preliminary objections seeking the dismissal of a claim may be sustained only in cases that are clear and free from doubt. In re Estate of Sauers, 32 A.3d 1241, 1247-48 (2011). To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery based upon the facts averred. *Unglo v. Zubik,* 29 A.3d 810, 813 (Pa. Super. 2011). If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Soto v. Nabisco, Inc.,* 32 A.3d 787, 790 (Pa. Super. 2011).

### (B) PROMISSORY ESTOPPEL CLAIM IN CUSTOM HOMES SUIT

Cestone and Custom Homes first seek to dismiss Eastern Roofing's promissory estoppel claim on the ground that "[t]here exist no allegations in the Complaint that [Eastern Roofing] suffered any damages as a result of relying on the promise...forming as the basis of its promissory estoppel claim." (Docket Entry No. 11, p. 3 in No. 08

CV 8764). Cestone and Custom Homes argue that "[t]o raise that theory [Eastern Roofing] must plead some new damage - separate and apart from the underlying breach of contract damages - accruing from defendant's inability to make good on its post-breach promise to pay [Eastern Roofing]." (*Id.*, at p. 4). Eastern Roofing counters that it "properly and sufficiently states a claim for promissory estoppel" and that the defense "request for a dismissal of [Eastern Roofing's] promissory estoppel claim at the pleading stage is simply premature." (*Id.*, No. 12 at p. 4).

To maintain an action for promissory estoppel, the plaintiff must show that: (1) the promissor made a promise that [s]he should have reasonably expected to induce action or forbearance on the part of the promissee; (2) the promissee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only be enforcing the promise. *Crouse v. Cyclops Industries,* 560 Pa. 394, 403, 745 A.2d 606,610 (2000); *Guerra v. Redevelopment Authority of City of Philadelphia*, 27 A.3d 1283, 1292 (Pa. Super. 2011). "In effect, the detrimental reliance of the promissee creates the consideration necessary for the formation of a contract, the breach of which is actionable." *Matarazzo v. Millers Mutual Group, Inc.*, 927 A.2d 689, 692 (Pa. Cmwlth. 2007). Promissory estoppel "is invoked in order to avoid injustice" and "permits an equitable remedy to a contract dispute" by making "otherwise unenforceable agreements binding." *Pratter v. Penn Treaty American Corp.*, 11 A.3d 550, 556 (Pa. Cmwlth. 2010) (quoting *Crouse*, supra). It is proper for a plaintiff to plead promissory estoppel as an alternative cause of action to a breach of contract claim. See, *JK Roller Architects, LLC v. Tower Investments,*

*Inc.,* 2003 WL 1848101, at \* 1 n. 1 (Phila. Co. 2003) ("Unjust enrichment and promissory estoppel are proper alternative causes of action to a breach of contract claim."); *Booth v. Southern Fulton School District,* 43 D. & C. 4th 21, 32 (Fulton Co. 1998) ("Because these plaintiffs are seeking to recover on the theories of breach of contract and promissory estoppel, they should be required to plead each alternative cause of action in a separate count.").

Eastern Roofing avers in the complaint that Cestone and Custom Homes repeatedly promised to pay it for its roofing services, that Eastern Roofing performed work on the Sanctuary Townhomes project in reasonable and justifiable reliance on those promises, and that it has suffered damages of $11,090.00 "[a]s a direct and proximate result of the defendant's failure to pay the outstanding balance due and owing" to Eastern Roofing. (Docket Entry No. 4, ¶¶53-59 in No. 08 CV 8764). If proven at trial, those factual allegations will establish the elements of a promissory estoppel claim. Thus, Eastern Roofing has adequately pled a cause of action for promissory estoppel as an alternate theory of liability to its breach of contract claim.

Cestone and Custom Homes have not cited any authority for their proposition that Eastern Roofing must allege distinct damage "separate and apart from the underlying breach of contract damages" in order to state a claim for promissory estoppel. It is axiomatic that consideration is an essential component of an enforceable contract, *Pennsy Supply. Inc. v. American Ash Recycling Corp. of Pennsylvania,* 895 A.2d 595, 600 (Pa. Super.

2006), app. denied, 589 Pa. 722, 907 A.2d 1103 (2006), and "that promissory estoppel is used to enforce a promise not otherwise supported by consideration." *Id.*, at 604. As with a contract claim, the damages recoverable in an action for promissory estoppel are designed to put the promisee in the same position that [s]he would have enjoyed if the promise had been performed by the promisor. See, *Travers v. Cameron County School District*, 117 Pa. Cmwlth. 606, 614 n. 5, 544 A.2d 547, 551 n. 5 (1988) (quoting Restatement (Second) of Contracts §90, which has been adopted as the law in Pennsylvania, see, *Lobolito, Inc. v. North Pocono School District*, 562 Pa. 380, 389 n. 9, 755 A.2d 1287, 1292 n. 9 (2000), and stating that "[a] promise binding under [section 90] is a contract, and full-scale enforcement by normal remedies is often appropriate," but "damages should not put the promisee in a better position than performance of the promise would have put him."). It is, therefore, not necessary for Eastern Roofing to plead damages separate from its breach of contract losses in order to state an alternate claim for promissory estoppel. Since Eastern Roofing has averred a cognizable promissory estoppel claim, Cestone and Custom Homes have not established that the law states with certainty that no recovery is possible on the facts alleged.

## (C) GIST OF THE ACTION DOCTRINE

Cestone, Custom Homes and Mastriani Construction seek to dismiss Eastern Roofing's claims for fraudulent misrepresentation in both lawsuits. To state a claim for common law fraud, the plaintiff must allege: (1) a representation; (2) material to the transaction at issue; (3) made falsely, with either knowledge or reckless disregard

of its falsity; (4) with the intent to mislead another person or induce justifiable reliance; and (5) some injury caused by the reliance. *Bennett v. A. T. Masterpiece Homes at Broadsprings, LLC,* 2012 WL 698132, at * 5 n. 5 (Pa. Super. 2012). The intent to defraud may be established by circumstantial evidence, that is, by inferences that reasonably may be drawn from the facts and circumstances. *Integrated Behavioral Health Services v. Department of Public Welfare,* 871 A.2d 296, 300 (Pa. Cmwlth. 2005); *Brown v. Jones,* 2012 WL 756607, at * 4 (Lacka. Co. 2012).

In the Custom Homes action, Eastern Roofing's fraud claim is based upon the serial promises allegedly made by Cestone and Custom Homes to pay Eastern Roofing for the work it performed on the Sanctuary Townhomes project. (Docket Entry No. 4, ¶¶61-66 in No. 08 CV 8764). The obligation to pay Eastern Roofing for the services it provided on that project arose from the Sanctuary Townhomes subcontract agreement which is attached to the complaint. (*Id.,* ¶6, exhibit A). In contrast, Eastern Roofing's fraudulent inducement claim in the Mastriani Construction suit stems from the telephone conversation that Cestone allegedly had with John Basalyga in late 2004 during which he promised Eastern Roofing that it would receive additional work and obtain favorable financing from the local bank on which he served as a director if it waited to receive payment due on the change orders for the various construction projects. (Docket Entry No. 4, ¶¶14-17 in No. 08 CV 8765).

Cestone, Custom Homes and Mastriani Construction first contend that Eastern Roofing's fraud claims in both

lawsuits are barred by the gist of the action doctrine. (Docket Entry No. 11, pp. 5-6 in No. 08 CV 8764; Docket Entry No. 11, p. 7 in No. 08 CV 8765). In the Custom Homes action, Eastern Roofing responds that the demurrer to its fraud claim "is simply premature" since "it is too early in the proceedings to classify the gist of [Eastern Roofing's] suit." (Docket Entry No. 12, p. 7 in No. 08 CV 8764). Eastern Roofing maintains in the Mastriani Construction matter that its fraudulent inducement claim is not dependent upon the various subcontract agreements and, to the contrary, is predicated upon the Cestone-Basalyga telephone conversation and Eastern Roofing's subsequent agreement "to complete other and additional work for the defendants relative to the Dunmore Civic Center, the Polk Elementary School, the Wilkes Barre Townhouses, Mill Street, Sleep Inn, and Vernard Road projects." (Docket Entry No. 12, pp. 8-9 in No. 08 CV 8765).

"Under Pennsylvania law, a cause of action framed as a tort but reliant upon contractual obligations will be analyzed to determine whether the cause of action properly lies in tort or contract." *Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc.*, 9 A.3d 1207, 1212 (Pa. Super. 2010). The gist of the action "doctrine 'maintains the conceptual distinction between breach of contract claims and tort claims,' and precludes plaintiffs from recasting ordinary breach of contract claims as tort claims." *McShea v. City of Philadelphia,* 606 Pa. 88, 96, 995 A.2d 334, 339 (2010) (quoting *eToll, Inc. v. Elias/Savion Advertising. Inc.,* 811 A.2d 10, 14 (Pa. Super. 2002)). Under this approach, "[t]ort actions lie for breaches of duties imposed by law

as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Mirizio v. Joseph,* 4 A.3d 1073, 1079 (Pa. Super. 2010) (quoting *eToll,* supra), app. denied, 14 A.3d 829 (Pa. 2010). The gist of the action doctrine operates to bar tort claims (1) arising solely from the contractual relationship between the parties, (2) when the alleged duties breached were grounded in the contract itself, (3) where any liability stems from the contract, and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.[2] *Strausser,* 944 A.2d at 767; *Reardon v. Allegheny College,* 926 A.2d 477, 486 (Pa. Super. 2007), app. denied, 596 Pa. 755, 947 A.2d 738 (2008).

Claims of fraud in the performance of a contract are clearly barred under the gist of the action doctrine. *Autochoice Unlimited, Inc. v. Avengard Auto Finance, Inc.,* 9 A.3d 1207, 1212 (Pa. Super. 2010) (quoting Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. 2005), app. denied,

---

2. In contrast to the Superior Court's four-part analysis, the Commonwealth Court employs a "misfeasance/nonfeasance" test in determining whether an action sounds in contract or in tort under the gist of the action doctrine. Under the Commonwealth Court's approach, if there is a "misfeasance" or an improper performance of a contractual obligation, the defendant breaches a duty imposed by law as a matter of social policy and the gist of the action sounds in tort. Conversely, if there is a nonfeasance or mere failure to perform, the wrong attributed to the defendant is solely a breach of the defendant's duty to perform under the contract, in which instance the gist of the plaintiff's action sounds solely in contract. *Pratter v. Penn Treaty American Corp.,* 11 A.3d 550, 559 n. 9 (Pa. Cmwlth. 2010) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.,* 806 A.2d 936, 944 (Pa. Cmwlth. 2002), rev'd on other grounds, 578 Pa. 479, 854 A.2d 425 (2004)).

587 Pa. 695, 897 A.2d 458 (2006)); *Sparrow v. PACE/ CM, Inc.*, 2011 WL 1131487, at * 10 (Lacka. Co. 2011). However, a tort claim asserting fraudulent inducement to enter into an agreement is not precluded by the gist of the action doctrine since fraudulent inducement allegations do not relate to the defendant's failure to perform obligations under the parties' contract. *Mirizio*, 4 A.3d at 1085-86; *Healey v. Wells Fargo, N.A.*, 2012 WL 994564, at * 18 (Lacka. Co. 2012); *Busy Bee, Inc. v. Wachovia Bank, N.A.*, 2006 WL 723487, at *20 (Lacka. Co.2006), aff'd, 932 A.2d 248 (Pa. Super. 2007), app. denied, 598 Pa. 778, 959 A.2d 318 (2008). But see, *Vives v. Rodriguez*, 2012 WL 298760 at * 11 (E.D. Pa. 2012) ("We ultimately side with the authority from our circuit, and predict that the Pennsylvania Supreme Court would find fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract to be barred by the gist of the action doctrine.").

Eastern Roofing's fraud claim in the Custom Homes suit is based entirely upon the contractual obligation of Cestone and Custom Homes to pay Eastern Roofing for its work on the Sanctuary Townhomes project pursuant to their subcontract agreement. As such, those fraud claims are clearly foreclosed by the gist of the action doctrine in that they involve the alleged fraudulent performance of contract-based duties. However, the genesis of Eastern Roofing's fraudulent inducement claim in the Mastriani Construction action is the Cestone-Basalyga telephone conversation in late 2004, not the seven subcontract agreements for the projects at issue in that case. Cestone purportedly induced Eastern Roofing to enter into

the Dunmore Civic Center, Polk Elementary School, Wilkes Barre Housing Authority, Mill Street Housing Development, Sleep Inn and Vernard Road subcontracts by falsely representing that Mastriani Construction would pay the overdue Mauch Chunk Train Station invoices and procure favorable financing for Eastern Roofing from Cestone's local bank. Since the proffered liability for such fraudulent inducement does not stem from those contracts and the success of Eastern Roofing's fraudulent inducement claim is not dependent upon the outcome of its breach of contract claims, Eastern Roofing's cause of action for fraudulent inducement in the Mastriani Construction litigation is not barred by the gist of the action doctrine. Consequently, the demurrer to count VIII of the complaint in the Custom Homes case will be sustained, but the demurrer to the fraudulent inducement claim in the Mastriani Construction action will be overruled.

*(D) LEGAL SUFFICIENCY OF FRAUD CLAIM IN MASTRIANI CONSTRUCTION SUIT*

Cestone and Mastriani Construction alternatively demur to Eastern Roofing's fraud in the inducement claim on the ground that Eastern Roofing "merely alleges the breach of an alleged promise to make a future payment." (Docket Entry No. 11, p. 7 in No. 08 CV 8764). Arguing that the breach of a promise to do something in the future is not actionable as fraud, they assert that Eastern Roofing's fraud "claim is legally insufficient and should be dismissed." (*Id.*). Eastern Roofing replies that an intention to take future action which does not actually comport with the declarant's true state of mind can constitute a misrepresentation of an existing fact. (*Id.*, No. 12, p. 8)

(quoting *Phoenix Technologies, Inc. v. TRW. Inc.,* 834 F.Supp. 148, 152 (E.D. Pa. 1993)).

It is true that the mere breach of a promise to do something in the future, without more, is not fraud. *eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 16-17 n. 6 (Pa. Super. 2002); *Busy Bee, Inc., supra* at * 24. However, "a promise which the promissor had no intention of keeping at the time [s]he made it may be actionable as fraud." *Martrano v. Quizno's Franchise Co., LLC,* 2009 WL 1704469, at * 8 n. 26 (W.D. Pa. 2009); *Precision Printing Co., Inc. v. Unisource Worldwide, Inc.,* 993 F.Supp. 338, 356 (W.D. Pa. 1998); *Fox's Food, Inc. v. K-Mart Corp.,* 870 F.Supp. 599, 609 (M.D. Pa. 1994); *DTK Ventures, LP v. Russo,* 2006 WL 2988463, at * 7 (Lacka. Co. 2006). "Statements of intention,...which do not, when made, represent one's true state of mind are misrepresentations known to be such and are fraudulent." *College Watercolor Group. Inc. v. William H. Newbauer, Inc.,* 468 Pa. 103, 115, 360 A.2d 200, 206 (1976); *DTK Ventures, supra; Busy Bee. Inc., supra.*

Eastern Roofing asserts that Cestone, acting individually and on behalf of Mastriani Construction, represented that they would pay Eastern Roofing's invoices, provide Eastern Roofing with additional work and secure favorable financing for it via a local bank if it deferred the payment of its outstanding bills. (*Id.,* No. 4, ¶¶14-17). Eastern Roofing avers that Cestone and Mastriani Construction knew that those representations were false when they were made with the clear intent of misleading Eastern Roofing and inducing it to act in reliance upon those misrepresentations. (*Id.,* ¶¶109-111). Therefore, affording

Eastern Roofing the benefit of all inferences which may be reasonably deduced from those averments, see, *Landay v. Rite Aid,* 2012 WL 982790, at * 1 (Pa. Super. 2012) (when considering preliminary objections, all material facts set forth in the complaint are admitted as true, as well as all inferences reasonably deducible therefrom), it has alleged that Cestone and Mastriani Construction made certain promises which they had no intention of keeping at the time that they were made. Since those statements of intention arguably did not reflect their true state of mind, Cestone and Mastriani Construction may be liable for fraud. Hence, their demurrer to Eastern Roofing's fraudulent inducement claim will be overruled.

### (E) ECONOMIC LOSS DOCTRINE

Cestone, Custom Homes and Mastriani Construction next seek to dismiss Eastern Roofing's negligent misrepresentation claims in both lawsuits. Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bortz v. Noone,* 556 Pa. 489, 500, 729 A.2d 555, 561 (1999); *Smalanskas v. Indian Harbor Insurance Company,* 2008 WL 3889290, at * 7 (*Lacka. Co.* 2008), aff'd, 970 A.2d 490 (Pa. Super. 2009). The primary difference between fraudulent misrepresentation and negligent misrepresentation is the state of mind of the person making the representation. *Busy Bee, Inc. v. Corestates Bank,* 67 D. & C. 4th 496, 521-522 (Lacka. Co. 2004). With a negligent misrepresentation claim, the

speaker need not know that the spoken words are untrue, but must have failed to make a reasonable investigation of the truthfulness of the representation. *Bortz*, 556 Pa. at 501, 729 A.2d at 561; *Com. v. TAP Pharmaceutical Products, Inc.*, 36 A.3d 1197, 1276 (Pa. Cmwlth.2011).

Cestone, Custom Homes and Mastriani Construction contend that Eastern Roofing's "negligent misrepresentation claims against defendants allege exclusively economic losses and seek exclusively economic damages." (Docket Entry No. 11, p. 11 in No. 08 CV 8764; Docket Entry No. 11, p. 8 in No. 08 CV 8765). Citing *E.J. Deseta, Inc. v. Goldner/Accord Ballpark, L.P.*, 2006 WL 51207, *2 (Phila. Co. 2006), those defendants posit that "[t]he economic loss doctrine 'states that no cause of action exists for negligence that results solely in economic damages.'" (*Id.*). Eastern roofing argues that "section 552 of the restatement (second) of torts...allows [negligent misrepresentation] claims to evade dismissal even if they assert purely economic losses." (Docket entry No. 12, pp. 7-8 in No. 08 CV 8764; Docket entry No. 12, p. 10 in No. 08 CV 8765). Eastern roofing submits that "at this stage of the proceedings...it is too premature to determine whether section 552 of the restatement (second) of torts is applicable." (Docket entry No. 12, p. 9 in No. 08 CV 8764; Docket entry No. 12, p. 11 in No. 08 CV 8765).

Although the economic loss doctrine traces its roots to the United States Supreme Court decision in Robins *Dry Dock and Repair Company v. Flint.* 275 U.S. 303, 309 (1927), its first reported reference in Pennsylvania precedent is found in *Aikens v. Baltimore & Ohio*

*Railroad Company,* 348 Pa. Super. 17, 501 A.2d 277 (1985). In Aikens, employees of a plant that was damaged by a train derailment brought a negligence action against the railroad company for lost wages they suffered after production at the plant was curtailed due to the derailment. Noting that the employees did not suffer personal injury or property damage from the derailment, the Superior Court upheld the dismissal of the employees' suit and found that "negligent harm to economic advantage alone is too remote for recovery under a negligence theory." *Id.,* at 21, 501 A.2d at 279.

Some courts later extended the breadth of the economic loss doctrine to preclude recovery for negligent misrepresentation in construction litigation. In *Palco Linings, Inc. v. Pavex, Inc.,* 755 F.Supp. 1269 (M.D. Pa. 1990), the federal district court held that a subcontractor could not sue an architect and engineer for negligent misrepresentation after the subcontractor incurred additional costs as a result of delays allegedly attributable to their faulty design. Finding such claims barred by the economic loss doctrine, the Palco Linings court reasoned that under the restatement (second) of Torts §552, tort liability for economic loss caused by negligent misrepresentation is limited to those defendants who are in the business of selling information upon which customers rely and take conditional action, such as attorneys, abstractors of title, surveyors, inspectors of goods, operators of ticket services, and banks dealing with nondepositor's checks. *Id.,* at 1274.

In *David Pflumm Paving & Excavating, Inc. v. Foundation Services Company,* 816 A.2d 1164

(Pa. Super. 2003), an excavation subcontractor on a township's library construction project filed a negligent misrepresentation claim against architectural and engineering companies that performed subsurface testing for the township to assist it in the design of its library. The excavation subcontractor alleged that it encountered large quantities of rock and incurred substantial expense after it relied upon the companies' subsurface testing report which negligently represented that rock would not be encountered during excavation. Relying upon *Linde Enterprises. Inc. v. Westmoreland Engineering Company. Inc.*, 412 Pa. Super. 67, 602 A.2d 897 (1991), app. denied, 533 Pa. 601, 617 A.2d 1275 (1992), the Superior Court stated that "[a]lthough negligence actions pursuant to section 552 may lie where there is loss that is not solely economic,...as this court...indicated in *Linde*, the economic loss doctrine precludes recovery in negligence actions for injuries which are solely economic." David Pflumm Paving & Excavating, Inc., 816 A.2d at 1170. As a result, the Superior Court affirmed the dismissal of the subcontractor's negligent misrepresentation claims. *Id.*, at 1171 ("Because, as explained above, Pflumm's claims for negligent misrepresentation are solely economic, they are precluded by the economic loss doctrine.").

The Supreme Court of Pennsylvania later considered whether a contractor could maintain a negligent misrepresentation claim against an architect under section 552 of the Restatement. In *Bilt-Rite Contractors. Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270 (2005), the contractor alleged that the architect's plans and specifications, upon which the contractor relied

in submitting the winning bid, contained negligent misrepresentations which caused the contractor to suffer economic loss in connection with a school construction project. The Supreme Court interpreted section 552 as applying "only to those businesses which provide services and/or information that they know will be relied upon by third parties in their business endeavors, and it includes a foreseeability requirement, thereby reasonably restricting the class of potential plaintiffs." *Id.*, at 479, 866 A.2d at 286. In declining to follow *Palco Linings, supra,* and *Linde Enterprises, supra,* the *Bilt-Rite* court stated that "we hereby adopt section 552 as the law in Pennsylvania in cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information." *Id.*, at 482, 866 A.2d at 287. See also, *TAP Pharmaceutical,* 36 A.3d at 1277.

The Supreme Court subsequently concluded that liability for negligent misrepresentation under section 552 is confined to those individuals or entities engaged in the business of supplying information for pecuniary gain. In *Excavation Technologies, Inc. v. Columbia Gas Company of Pennsylvania,* 604 Pa. 50, 985 A.2d 840 (2009), a contractor that sustained economic loss as a result of a utility's failure to properly mark the location of underground gas lines sued the utility for negligent misrepresentation after the contractor struck certain gas lines and suffered economic losses due to construction delays. The trial court sustained

the utility's demurrer and the Superior Court affirmed, reasoning that a utility is not "akin to the architect in *Bilt-Rite* who was a professional information provider" and that "[t]he relationship between utilities and contractors bears no resemblance to the relationships discussed in *Bilt-Rite*." *Excavation Technologies, Inc. v. Columbia Gas Company of Pennsylvania*, 936 A.2d 111,116 (Pa. Super. 2007) (en banc). The Supreme Court agreed and held that "[b]ecause the [utility] is not in the business of providing information for pecuniary gain, section 552(1) and (2) do not apply here." *Excavation Technologies. Inc.*, 604 Pa. at 56, 985 A.2d at 843.

Other courts have similarly restricted the scope of viable claims under section 552 which are not barred by the economic loss doctrine. See, *Integrity Carpet Cleaning, Inc., v. Bullen Companies,* 2011 WL 31397, at * 4 (E.D. Pa. 2011) ("The Pennsylvania Supreme Court expressly limited its holding in Built-Rite to apply to design professionals, and did not include generic manufacturers, even those involved in sophisticated work."); *Federal Home Loan Bank of Pittsburgh v. J.P. Morgan Securities LLC,* 19 D. & C. 5th 32, 46 (Alleg. Co. 2010) ("The Supreme Court made clear in its rationale that application of section 552 liability for economic loss was limited to design professionals, such as architects, because they have a contractual relationship with some party to the construction project, typically the owner, from which a duty flows to foreseeable third parties to that contract."). In the cases sub judice, Eastern Roofing does not allege that Cestone, Custom Homes or Mastriani Construction acted as professional information providers or otherwise

supplied plans or specifications which contained negligent misrepresentations that caused Eastern Roofing to suffer pecuniary harm. Rather, Eastern Roofing's negligent misrepresentation claims merely reference Cestone's promises "to pay [Eastern Roofing] for the work it performed" on the construction projects. (Docket entry No. 4, ¶68 in No. 08 CV 8764; Docket Entry No. 4, ¶114 in No. 08 CV 8765). The contractual relationship between a contractor and a subcontractor is not comparable to the relationships analyzed in *Bilt-Rite*, absent some suggestion that the contractor negligently provided professional design information upon which the subcontractor relied in performing its work.

Eastern Roofing has not alleged any facts which theoretically could state a cognizable claim under section 552 as interpreted by *Bilt-Rite* and its progeny. It does not allege any personal injury or property damage and instead claims purely economic loss. Eastern Roofing contends that its "negligent misrepresentation claim should be allowed to proceed to discovery, and if after reasonable discovery it appears that section 552 is inapplicable, defendants will have an opportunity to contest [Eastern Roofing's] negligent misrepresentation claim via summary judgment." (Docket Entry No. 12, p. 9 in No. 08 CV 8764; Docket Entry No. 12, p. 11 in No. 08 CV 8765). However, without any averments in the complaint which conceivably infer a valid claim under section 552, Eastern Roofing cannot withstand the defense demurrers based upon the economic loss doctrine. Accordingly, the preliminary objections of Cestone, Custom Homes and Mastriani Construction to Eastern Roofing's negligent

misrepresentation claims set forth in counts IX of the complaints in the Custom Homes and Mastriani Construction actions will be sustained.

## (F) CESTONE'S INDIVIDUAL LIABILITY

Cestone seeks to dismiss all claims filed against him in the Mastriani Construction case and argues that he cannot be individually liable since he did not sign any of the subcontract agreements, nor did he personally benefit from the wrongful conduct alleged in the complaint. (Docket Entry No. 11, pp.4-6 in No. 08 CV 87665). Eastern Roofing maintains that Cestone may be personally accountable for damages based upon the "participation theory" of liability. (*Id.*, No. 12, pp.4-6).

Although an officer or agent of a corporation who takes no part in the commission of a tort committed by the corporation is not individually liable to third parties for such a tort, *Nordi v. Keystone Health Plan West. Inc.,* 989 A.2d 376, 384 (Pa. Super. 2010), such an officer or agent may be held liable in tort under the "participation theory." *Roethlein v. Portnoff Law Associates, Ltd.,* 25 A.3d 1274, 1280 (Pa. Cmwlth. 2011). Under that theory, the court imposes liability on the participating individual as an actor, not as an owner or officer. *Wicks v. Milzoco Builders, Inc.,* 503 Pa. 614, 621, 470 A.2d 86, 90 (1983); *Nordi, supra.* To impose liability under the participation theory, the plaintiff must establish that the individual officer or agent engaged in misfeasance rather than mere nonfeasance. *Roethlein, supra; Com. ex rel. Corbett v. Snyder,* 977 A.2d 28, 46 (Pa. Cmwlth. 2009), app. denied, 606 Pa. 700, 999 A.2d 1247 (2010). Misfeasance involves

the improper performance of an act whereas nonfeasance refers to the simple failure to act. *Shay v. Flight C Helicopter Services, Inc.*, 822 A.2d 1, 17 (Pa. Super. 2003). Liability may exist under the participation theory even though the agent or officer derived no personal benefit and the corporation alone was enriched by the tortious act. *Shonberger v. Oswell,* 365 Pa. Super. 481, 485, 530 A.2d 112, 114 (1987); *Sanzone v. Phoenix Technologies, Inc.,* 1990 WL 50732, at * 13 (E.D. Pa. 1990).

Eastern Roofing has specifically averred that Cestone "personally and individually participated in the tortious and unlawful conduct" alleged in the complaint filed in the Mastriani Construction lawsuit. (Docket Entry No. 4, ¶¶5, 52 in No. 08 CV 8765). Indeed, Cestone was the sole tortfeasor during the Cestone-Basalyga telephone conversation involving the fraudulent misrepresentations claimed by Eastern Roofing. The conduct in which Cestone allegedly participated involved misfeasance rather than nonfeasance and exposes Cestone to potential liability under the participation theory. See, *Wicks, supra; Roethlein, supra.* The fact that Cestone purportedly did not benefit personally from the alleged misconduct is of no consequence. *Shonbemer, supra.* Accordingly, Cestone's demurrer to the individual claims asserted against him will be overruled. An appropriate order follows.

## ORDER

And now, April 13, 2012, upon consideration of the preliminary objections in the nature of a demurrer filed by defendants Michael C. Cestone, Individually and t/d/b/a Cestone Custom Homes in No. 08 CV 8764 (Lacka. Co.),

the preliminary objections in the nature of a demurrer filed by defendants Michael G. Cestone and S. G. Mastriani Construction Management, Inc. in No. 08 CV 8765 (Lacka. Co.), the memoranda of law submitted by the parties and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

1.  Defendants' preliminary objections in the nature of a demurrer are sustained in part and overruled in part;

2.  The preliminary objections to the plaintiff's promissory estoppel claim (count VII) in No. 08 CV 8764 are overruled;

3.  The preliminary objections to the plaintiff's fraudulent misrepresentation claim (count VIII) in No. 08 CV 8764 are sustained based upon the gist of the action doctrine, and count VIII of the complaint in No. 08 CV 8764 is dismissed;

4.  The preliminary objections to the plaintiff's negligent misrepresentation claims (counts IX) in No. 08 CV 8764 and No. 08 CV 8765 are sustained pursuant to the economic loss doctrine, and counts IX of the complaints filed in No. 08 CV 8764 and No. 08 CV 8765 are dismissed;

5.  The preliminary objections to the plaintiff's fraudulent inducement claim (count VIII) in No. 08 CV 8765 are overruled;

6.  The preliminary objections of defendant Michael G. Cestone to his personal liability for breach of contract (count I), violation of the Contractor and Subcontractor

Payment Act (count II), unjust enrichment (count III), quantum meruit (count IV), account stated (count V) and promissory estoppel (count VII) in No. 08 CV 8765 are overruled based upon the participation theory;

7. With the concurrence of the plaintiff, the defendants' preliminary objections to the plaintiff's claims for violations of the Unfair Trade Practices and Consumer Protection Law (counts VI) in No. 08 CV 8764 and No. 08 CV 8765 are sustained, and count VI of the complaints filed in No. 08 CV 8764 and No. 08 CV 8765 are dismissed; and

8. Within the next twenty (20) days, the defendants shall file responsive pleadings to the complaints in No. 08 CV 8764 and No. 08 CV 8765