**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| DAVID M. LANDAY AND PATBERG CARMODY & GING, | : No. 20 WAP 2013 |
| | : |
| | : Appeal from the Order of the Superior |
| Appellees | : Court entered March 23, 2012 at No. 901 |
| | : WDA 2011, reversing the Order of the |
| | : Court of Common Pleas of Allegheny |
| v. | : County, Civil Division, entered May 5, |
| | : 2011 at No. GD-10-005782, and |
| | : remanding. |
| RITE AID OF PENNSYLVANIA, INC., | : |
| | : 40 A.3d 1280 (Pa. Super. 2012) |
| Appellant | : |
| | ARGUED: April 8, 2014 |

**OPINION**

**MADAME JUSTICE TODD**          **DECIDED: NOVEMBER 24, 2014**

In this discretionary appeal, we consider whether the Medical Records Act ("MRA" or "the Act"), 42 Pa.C.S.A. §§ 6151-6160, applies to the reproduction of records by pharmacies, and, if so, whether, and under what circumstances, pharmacies may charge customers a flat fee for the reproduction of records. For the reasons that follow, we hold that the Act does not apply to pharmacies, and, as a result, we need not address the flat fee issue. In light of our conclusions, we reverse the decision of the Superior Court.

Briefly, and by way of background, the MRA was enacted in 1986. The Act, as described by this Court,

> recognizes that a patient has a right to his own medical records; authorizes the use of certified copies of original medical records at trials and other proceedings without the necessity of preliminary testimony respecting foundation,

identity and authenticity; streamlines the process for securing copies of medical records; and . . . addresses what medical records providers can charge for the copies provided.

Chiurazzi Law Inc. v. MRO Corp., 97 A.3d 275, 276 (Pa. 2014).

Notably, when first enacted, the Act referred only to subpoenas for records served upon employees of "health care facilities." Further, the Act did not contain statutory caps on the amount that could be charged for the reproduction of records. In 1998, however, the Act was amended in several respects pertinent to this appeal. First, Section 6152(a)(1) was expanded to include subpoenas served upon a "health care provider":

> When a subpoena duces tecum is served upon *any health care provider or* an employee of any health care facility licensed under the laws of this Commonwealth, requiring the production of any medical charts or records at any action or proceeding, it shall be deemed a sufficient response to the subpoena if the *health care provider or* health care facility notifies the attorney for the party causing service of the subpoena, within three days of receipt of the subpoena, of the health care *provider's or* facility's election to proceed under this subchapter.

42 Pa.C.S.A. § 6152(a)(1) (as amended in 1998) (emphasis added to indicate amendments).

In addition, the 1998 amendments limited the amount a health care provider or health care facility could charge for the reproduction of medical charts or records by adding the following subsection:

> Except as provided in subparagraph (ii) [relating to record requests by a district attorney], the health care provider or facility or a designated agent shall be entitled to receive payment of such expenses before producing the charts or records. The payment shall not exceed $15 for searching for and retrieving the records; $1 per page for paper copies for the first 20 pages; 75¢ per page for pages 21 through 60;

and 25¢ per page for pages 61 and thereafter; $1.50 per page for copies from microfilm; plus the actual cost of postage, shipping or delivery. No other charges for the retrieval, copying and shipping or delivery of medical records other than those set forth in this paragraph shall be permitted without prior approval of the party requesting the copying of the medical records. The amounts which may be charged shall be adjusted annually beginning on January 1, 2000, by the Secretary of Health of the Commonwealth based on the most recent changes in the consumer price index reported annually by the Bureau of Labor Statistics of the United States Department of Labor.

42 Pa.C.S.A. § 6152(a)(2)(i) (as amended in 1998).[1]

Finally, Section 6155(b) of the Act was amended to allow a patient's designee, including his attorney, the right to obtain copies of medical charts and records upon request, without a subpoena, for an amount not in excess of that set forth above in Section 6152(a)(2)(i):

(b) Rights to records generally.--

(1) A patient or his designee, including his attorney, shall have the right of access to his medical charts and records and to obtain photocopies of the same, without the use of a subpoena duces tecum, for his own use. A health care provider or facility shall not charge a patient or his designee, including his attorney, a fee in excess of the amounts set forth in section 6152(a)(2)(1) (relating to subpoena of records).

---

[1] In 2012, the amounts allowable under Section 6152(a)(2)(i) were increased as follows: $20.62 for searching for and retrieving the records, $1.39 per page for the first 20 pages, $1.03 per page for pages 21 through 60, and 34¢ per page for pages 61 and thereafter for paper copies or reproductions on electronic media whether the records are stored on paper or in electronic format; $2.04 per page for copies from microfilm; plus the actual cost of postage, shipping or delivery. 42 Pa.C.S.A. § 6152(a)(2)(i) (2012).

42 Pa.C.S.A. § 6155(b)(1) (as amended in 1998).[2] With these relevant sections of the MRA in mind, we turn to the facts of the instant case.

Appellant Rite Aid of Pennsylvania, Inc. ("Rite Aid") is a Pennsylvania corporation that operates pharmacies throughout the Commonwealth. In or around December 2008, Attorney David A. Landay submitted to Rite Aid an "authorization" on behalf of an individual, requesting copies of the individual's pharmacy records. Around the same time, the law firm of Patberg Carmody & Ging ("PC&G") also submitted an authorization to Rite Aid requesting copies of pharmacy records for an individual.[3] In response to the requests, Rite Aid sent invoices for $50 to both Landay and PC&G (collectively, "Appellees"); both invoices contained the following language:

> FOR PROFESSIONAL SERVICES RENDERED IN RESPONSE TO THE FOLLOWING REQUEST/SUBPOENA FOR PRESCRIPTION FILES AS FOLLOWS: RESEARCH & PREPARATION OF FILES, CLERICAL EXPENSES, PHOTOCOPYING EXPENSES AND POSTAGE AND HANDLING.

Rite Aid Invoices, 12/4/08 and 12/3/08. Appellees paid the invoices, and Rite Aid provided the requested copies of the pharmacy records.

On March 24, 2010, Appellees filed a class action against Rite Aid. In Count I of the complaint, Appellees claimed that Rite Aid breached an implied agreement between the parties and Rite Aid that Rite Aid would provide copies of its records to its customers in a manner consistent with Pennsylvania law, limiting the amount that may be charged to the estimated actual and reasonable expenses incurred in connection

---

[2] Prior to the 1998 amendments, Section 6155(b) provided:
> A patient shall have the right of access to all of his medical charts and records and to photocopy the same for his own use.

42 Pa.C.S.A. § 6155 (as enacted in 1986).

[3] The individuals both are identified in the record only as "Patient A."

with the reproduction of the requested records. Specifically, Appellees maintained that Rite Aid's act of charging a flat fee for the reproduction of records violates Section 6152(a)(2)(i) of the MRA. In Count II of their complaint, Appellees requested a declaratory judgment that the MRA prohibits Rite Aid from charging more than the reasonable expenses it incurred to reproduce the requested records, and, further, precludes Rite Aid from charging a flat fee.

Rite Aid filed preliminary objections in the nature of a demurrer, asserting the MRA does not apply to the reproduction of pharmacy records because a pharmacy is neither a health care facility nor a health care provider under the Act. Rite Aid alternatively claimed that, even if the MRA does apply to pharmacies, Appellees' voluntary payment of Rite Aid's invoices defeated their claims.

The trial court, by the Honorable R. Stanton Wettick, Jr., granted Rite Aid's preliminary objections and dismissed its complaint. In concluding the MRA does not apply to pharmacies, or the reproduction of pharmacy records, Judge Wettick observed that Section 6155(b)(1), from the time it was enacted in 1986, has used the term "patient," and that, generally, "persons describe themselves as patients of the physician who wrote the prescription and customers of the pharmacy that filled the prescription. Persons describe themselves as patients of a hospital but persons do not describe themselves as patients of a pharmacy." Trial Court Opinion, 5/5/11, at 5. Judge Wettick reasoned that, "by using the term *patient*, the Legislature was focusing on problems concerning access to the records of hospitals and physicians. I have no reason to believe the same problems existed with respect to records of pharmacies." Id. at 6 (emphasis original).

In a unanimous published opinion, the Superior Court reversed the trial court's order granting Rite Aid's preliminary objections, and remanded for further proceedings.

Landay v. Rite Aid, 40 A.3d 1280 (Pa. Super. 2012). In doing so, the court first stated that it "fail[s] to see any ambiguity in the term 'patient.'" Id. at 1284.[4] The court continued:

> It is commonly understood that a person for whom a medication has been prescribed by a licensed health care provider is a patient. Nothing in the MRA requires that such a person be a patient of the pharmacy, as the trial court implies by its restrictive definition. However, we would not consider it erroneous to deem such an individual a patient of the dispensing pharmacist, who either owns or works for the pharmacy, as well as the prescribing health care provider.

Id.

In support of its interpretation, the Superior Court relied on the Pharmacy Act, 63 P.S. §§ 390-1 *et seq.*, which defines the practice of pharmacy as "the provision of health care services by a pharmacist," including, *inter alia*, "patient counseling." See Landay, 40 A.3d at 1284 (quoting 63 P.S. § 390-2(11)). The court specifically noted that, "as part of their health care duties, pharmacists are authorized to administer injectable medications, biologicals and immunizations. . . . Thus, the practice of pharmacy is not limited to filling prescriptions." Id. at 1285.

In addition, the Superior Court quoted at length from the Pennsylvania Code, which sets forth the specific duties owed by pharmacists to their patients, see 49 Pa.Code § 27.19 (adopted March 4, 1994), and observed:

> The language utilized in the Code, as well as the Pharmacy Act, reflects that a pharmacist is a health care

---

[4] Although the Superior Court indicated that it was "constrained to disagree with the trial court's conclusion" regarding ambiguity, it does not appear that the trial court found the language of Section 6155 to be ambiguous in the first instance; indeed, the trial court rejected the parties' discussion of other legislation and regulations, and stated that it "base[d its] ruling on the language of §6155(b)." Trial Court Opinion, 5/5/11, at 5.

provider and that the recipient of the prescription medication is a patient. The Code use of the term "patient profile," the requirement that the pharmacist maintain and review the profile, the duty to provide counseling, and the importance of maintaining confidentiality of all information compiled support the conclusion that the pharmacy records are medical records of a patient. A pharmacist is not merely an intermediary between a vendor and consumer. Rather, as noted above, a pharmacist is required to utilize his or her professional education, training, and judgment to provide health care to patients.

It is for these reasons we conclude that, under the MRA, a pharmacist is a health care provider, an individual to whom prescription medication is dispensed is a patient, and the patient pharmacy records maintained by the pharmacist are medical records. Accordingly, we hold that the MRA applies to pharmacies.

Id. at 1287-88.

With regard to Rite Aid's assertion that, even if the MRA applies to pharmacies, the parties were free to negotiate their own terms with respect to the charges for the reproduced pharmacy records pursuant to Section 6152(a)(2)(i) of the MRA, the court rejected Rite Aid's contention that Appellees' payment of Rite Aid's invoices vitiated Appellees' right to challenge the fees under the voluntary payment doctrine. Specifically, the court opined that, because there were no terms or itemization on the invoices, it was unable to conclude that Appellees had "full knowledge of the facts," as required for the voluntary payment doctrine to apply. Id. at 1288-89.

Rite Aid filed a petition for allowance of appeal with this Court, which we granted as to the following issues:

(1) Does the Medical Records Act apply to a pharmacy's provision of copies of records?

(2) Under the Medical Records Act, may a pharmacy charge a flat fee for the reproduction of pharmacy records if it gives the customer an invoice setting forth the fee and the customer reviews and pays the invoice without objection before receiving the pharmacy records?

Landay v. Rite Aid, 73 A.3d 577 (Pa. 2013) (order). As these issues raise questions of law, our standard of review is *de novo* and our scope of review is plenary. Dechert LLP v. Commonwealth, 998 A.2d 575, 579 (Pa. 2010).

Rite Aid first contends that the MRA does not apply to pharmacies, or requests for pharmacy records, because the MRA applies only to record requests from health care facilities, and pharmacies are not health care facilities. In support of its position, Rite Aid cites Section 6151 of the Act, titled "Use of certified copies," which provides:

> Medical charts or records of any *health care facility licensed under the laws of this Commonwealth* that are susceptible to photostatic reproduction may be proved as to foundation, identity and authenticity without any preliminary testimony, by use of legible and durable copies, certified in the manner provided in this subchapter by the employee of the health care facility charged with the responsibility of being custodian of the originals thereof. These copies may be used in any trial, hearing, deposition or other judicial or administrative action or proceeding, whether civil or criminal, in lieu of the original charts or records which, however, the health care facility shall hold available during the pendency of the action or proceeding for inspection and comparison by the court, tribunal or hearing officer and by the parties and their attorneys of record.

42 Pa.C.S.A. § 6151 (as enacted 1986) (emphasis added). According to Rite Aid, the language of Section 6151, which was not revised during the 1998 amendments, "makes clear that the Act applies only to the medical charts or records of a 'health care facility licensed under the laws of this Commonwealth.'" Appellant's Brief at 13.

In arguing that a pharmacy is not a health care facility under the MRA, Rite Aid acknowledges that the term "health care facility" is not defined in the MRA, but asserts that its meaning is evident when considered *in pari materia* with the Health Care Facilities Act ("HCFA"), 35 P.S. § 448.101 *et seq.* (enacted July 19, 1979), which defines "health care facility" as follows:

> [A] health care facility includes, but is not limited to, a general, chronic disease or other type of hospital, a home health care agency, a home care agency, a hospice, a long-term care nursing facility, cancer treatment centers using radiation therapy on an ambulatory basis, an ambulatory surgical facility, a birth center regardless of whether such health care facility is operated for profit, nonprofit or by an agency of the Commonwealth or local government. The department shall have the authority to license other health care facilities as may be necessary due to emergence of new modes of health care.

35 P.S. § 448.802a. Rite Aid contends that, under the doctrine of *ejusdem generis*, pharmacies "bear no resemblance to the listed facilities," and, thus, are not health care facilities. Appellant's Brief at 14.[5]

Rite Aid acknowledges that the legislature added the term "health care provider" to specific sections of the MRA, including Sections 6152(a) and (c), 6152.1,[6] and 6155(b), as part of the 1998 amendments to the Act. However, Rite Aid observes that subsections 6152(b) and (d) were not modified at that time, and still refer only to health

---

[5] We note that the Superior Court held only that a pharmacy was a health care *provider* under the MRA; it did not conclude that pharmacies were health care facilities. Further, Appellees do not argue that a pharmacy is a "health care facility" under the Act.

[6] Section 6152.1 of the Act provides for a limit on the amount a "health care provider or facility" may charge for the reproduction of medical charts or records when the charts or records are requested for the purpose of supporting a claim or appeal under any provision of the Social Security Act, or any federal or state financial needs-based benefit program. 42 Pa.C.S.A. § 6152.1 (as enacted in 1998).

care facilities.[7]  Id. at 20.  Rite Aid also emphasizes that no revisions were made to

Sections 6151, 6153,[8] 6154,[9] 6155(a),[10] or 6157[11] of the Act, all of which still reference

[7] Subsections 6152(b) and (d) provide, respectively:

> (b) Notice to other parties.--Upon this notification, the attorney causing the service of the subpoena shall notify all other attorneys of record or other parties, if they are not represented by attorneys, of the health care facility's election.
>
> (d) Certification.--The certification shall be signed before a notary public by the employee of the health care facility charged with the responsibility of being custodian of the records and shall include the full name of the patient, the patient's medical record number, the number of pages in the medical records and a legend . . . .

42 Pa.C.S.A. §§ 6152(b) and (d) (as enacted in 1986).

[8] Section 6153, entitled "Receipts," provides in relevant part:

> When the copies of records are personally delivered a receipt shall be presented to the person receiving the records for his signature and shall be immediately signed and returned to the person delivering the records.  The receipt shall contain the name of the health care facility, the full name of the patient, the date the copies of records were received and the signature of the person receiving the records.

42 Pa.C.S.A. § 6153 (as enacted in 1986).

[9] Section 6154, titled "Affidavit of none or partial possession," provides:

> If the health care facility has none of the charts or records specified in the subpoena, or only a part thereof, the custodian of the charts or records shall so state in a notarized affidavit and, following notice and payment of expenses, shall hold available the original charts or records which are in the health care facility's custody specified in the subpoena and shall deliver the certified copies together with the affidavit.

42 Pa.C.S.A. § 6154 (as enacted in 1986).

[10] Subsection 6155(a) provides:

> (a) Protective order.-- Any patient whose medical charts or records are copied and delivered pursuant to this subchapter, any person acting on such patient's behalf and the health care facility having custody of the charts or

(continued…)

only health care facilities. Thus, Rite Aid contends that the addition of the term "health care provider" to limited sections of the MRA should not be viewed as an expansion of the entire scope of the MRA to entities other than health care facilities. Instead, Rite Aid suggests that the addition of the phrase "health care provider" to certain sections of the MRA merely was intended to bring *operators* of health care facilities within the category of persons or entities from whom records may be obtained using subpoenas and patient requests. Appellant's Brief at 22; Appellant's Reply Brief at 10. According to Rite Aid, when read as a whole,

> the Act makes clear that it is dealing only with subpoenas for records of a health care facility, and not subpoenas seeking records of any entity that is not a health care facility. Viewed in this context, the language of Section 6152(a)(1) makes sense only if its reference to a "health care provider" is read in light of the definition in the HCFA − one who "operates a health care facility." 35 P.S. § 448.103.

Appellant's Brief at 21.

Rite Aid further argues that, to the extent the term "health care provider" may be construed more broadly than the term "health care facility," the existence of an alternative or expanded definition renders the MRA ambiguous, see, e.g., Delaware Cty.

_____

(…continued)
records shall have standing to apply to the court or other body before which the action or proceeding is pending for a protective order denying, restricting or otherwise limiting access to and use of the copies or original charts and records.

42 Pa.C.S.A. § 6155(a) (as enacted in 1986).

[11] Section 6157, titled "Retention of records," provides, in part, "When the records are received by the clerk of a court or other body from a health care facility or from a party or his attorney of record, they shall be retained in the clerk's custody at all times except when actually used in the action or proceeding." 42 Pa.C.S.A. § 6157 (as enacted in 1986).

v. First Union Corp., 992 A.2d 112, 118 (Pa. 2010) (a statute is ambiguous when there are at least two reasonable interpretations), thereby requiring further resort to statutory construction tools to determine whether the legislature intended the MRA to apply to entities other than health care facilities. Rite Aid asserts that such an analysis demonstrates that the legislature, in amending the MRA, did not intend to expand application of the Act to entities other than health care facilities, but, rather, intended to address concerns about the amount hospitals were charging for the reproduction of medical records. Appellant's Brief at 28.

Finally, Rite Aid contends that, even if this Court concludes the MRA does apply to health care providers, a pharmacy cannot be considered a health care provider because the traditional practice of pharmacy, which includes preparing and dispensing drugs to a consumer, is distinct from the practice of medicine. Rite Aid argues the Superior Court erred in concluding pharmacies constitute health care providers under the MRA on the basis of changes in the law that occurred *after* the 1998 amendments to the Act. Specifically, Rite Aid notes that, at the time of the 1998 amendments, a pharmacist's main function was to dispense drugs, and it was not until 2002 that pharmacists became authorized to administer injectable medications and vaccines, and not until 2010 that pharmacists became eligible to engage in collaborative drug therapy management[12] with physicians pursuant to 63 P.S. §§ 390-9.2 and 390-9.3. Rite-Aid also suggests that the considerations underlying application of the MRA to hospital records do not "readily apply to other types of health care entities, such as pharmacies,"

---

[12] Collaborative drug therapy management permits a pharmacist, *inter alia*, to "enter into a written collaborative agreement with a licensed physician authorizing the management of drug therapy for a disease or for a condition or symptom of a disease before practicing the management of drug therapy in a setting other than an institutional setting." 63 P.S. § 390-9.3(a).

Appellant's Brief at 34, and submits that the term "medical records," as contained in Section 6155(b), is a term of art which is not used when referring to records of prescriptions kept by pharmacies. Appellant's Brief at 40-41.[13]

In response to Rite Aid's arguments, Appellees maintain that the legislature's addition of the term "health care provider" to certain sections of the MRA in 1998, and its use of the term "or" in Section 6155(b)(1), as well as Section 6152(a)(1), demonstrate its intent that the terms "health care provider" and "health care facility" have different meanings, and application of the MRA not be limited to health care facilities.

Appellees further assert that the terms "health care provider or facility," "patient," and "medical records or charts," as contained in Section 6155(b)(1), are unambiguous and "readily susceptible to definition according to common and approved usage." Appellees' Brief at 12. In this regard, they contend: (1) a "patient" is "one who is undergoing medical care and treatment"; (2) the term "health care" is defined as "efforts to maintain or restore health, especially by trained and licensed professionals"; (3) the

---

[13] The Pennsylvania Pharmacists Association ("PPA") and the National Association for Chain Drug Stores ("NACDS") filed a joint amicus brief in support of Rite Aid, wherein they echo Rite Aid's assertion that the Superior Court, in construing the meaning of the terms "health care provider" and "health care facility," should have focused on the legislature's intent at the time it enacted and amended the MRA, and that any regulations allowing pharmacists to administer vaccines or engage in other health care services enacted after the 1998 amendments to the Act are not relevant. Additionally, PPA/NACDS cites to several states, including Louisiana, Ohio, and Indiana, which specifically include pharmacists in the definition of health care provider, and they suggest that Pennsylvania's failure to do the same demonstrates the legislature's intention that the MRA not apply to pharmacies. They further maintain that pharmacy records are not equivalent to other medical records, and they point out that, by law, pharmacy records must be provided to the customer at the time a prescription is filled. See 49 Pa.Code § 27.18(d).

term "provider" means "one that provides health care"; and (4) "the common and approved definition of the term 'health care provider' is a trained and licensed professional who provides or undertakes efforts to maintain or restore health." Id. at 12-13. Appellees further offer that the term "medical record" is commonly understood as "a record of a patient's medical information (as medical history, care or treatments received, test results, diagnoses, and medications taken)." Id. at 14.

Appellees observe that the term "pharmacist" is defined under the Statutory Construction Act as "[a]n individual licensed under the laws of this Commonwealth to practice as a pharmacist." Id. at 14 (quoting 1 Pa.C.S.A. § 1991). Appellees further note that "pharmacy" is defined in the dictionary as "the art, practice or profession of preparing, preserving, compounding and dispensing medical drugs." Id. (quoting Merriam-Webster's Collegiate Dictionary, at 928 (11th ed. 2003)). Appellees thus conclude:

> [T]he common and approved meaning of a pharmacist or pharmacy is a person or entity that is licensed under the laws of Pennsylvania to engage in the art, practice or profession of preserving, compounding and dispensing drugs.[] From this basic analysis, it is obvious that pharmacists are trained and licensed professionals who are engaged in efforts to maintain or restore the health of those who utilize their services and, therefore, constitute "health care providers" within the terms of the MRA.

Id. at 14-15.

Based on the above, Appellees contend the language of the MRA is plain, and, therefore, that it was unnecessary and improper for the Superior Court to engage in further statutory interpretation to determine whether pharmacies are health care providers. Nevertheless, Appellees contend that the Superior Court's ultimate determination that pharmacists are health care providers for purposes of the MRA was

correct. In so arguing, Appellees first note that the basic role of pharmacists in health care has been recognized in Pennsylvania since at least 1961, and that, since 1992, pharmacists have been required to perform a Prospective Drug Review ("PDR") prior to filling a prescription. Id. at 16-18. Appellees further highlight that, since 2002, pharmacists have been permitted to administer injectable medications, and, since at least 2010, pharmacists have been permitted to engage in collaborative drug therapy management. Id. at 20-21. Appellees also offer that the term "patient" is consistently used to refer to customers of pharmacies in both the Pharmacy Act and the Pennsylvania Code, and that the prescription profiles and patient profiles that pharmacies are required to maintain in connection with dispensed medications constitute "medical charts and records" under the MRA.

Finally, Appellees aver that Rite Aid's proposed construction of the MRA is erroneous because: it ignores the principle that a change of language in subsequent statutes on the same matter indicates a change of legislative intent; the principle of *in pari materia* does not apply because there is no ambiguity; and the HCFA and the MRA serve different purposes and address different subject matter, i.e., the safety of on-site premises (the HCFA) compared to the reproduction of medical records (the MRA). Appellees suggest that Rite Aid's more restrictive construction of the MRA will undermine the Act's purpose of providing individuals with broad access to their medical records, not only from pharmacies, but also from doctors. They also suggest Rite Aid's construction will "destroy established privacy protections of patients," because "[a] right of access to one's own personal information is considered a basic part of the right to privacy." Appellees' Brief at 44.[14]

---

[14] The Pennsylvania Association for Justice ("PAJ") has filed an amicus brief in support of Appellees. PAJ contends that, based on the educational and licensing requirements of pharmacists, and the fact they are authorized to render medical services, such as (continued…)

With these arguments in mind, we begin our analysis. Pursuant to the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501 *et seq.*, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Id. § 1921(a). The best indication of the General Assembly's intent in enacting a statute may be found in its plain language. Martin v. Com., Dep't of Transp., Bureau of Driver Licensing, 905 A.2d 438, 443 (Pa. 2006). When interpreting a statute, sections of the statute should be read together and construed to give effect to all of the statute's provisions. Id. § 1921(a). Words and phrases "shall be construed according to rules of grammar and according to their common and approved usage." Id. § 1903(a). Further, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear. Mishoe v. Erie Ins. Co., 824 A.2d 1153, 1155 (Pa. 2003).

Applying these principles, we first address Rite Aid's contention that the MRA applies only to health care facilities. It is well settled that we "are not permitted to ignore the language of a statute, nor may we deem any language to be superfluous." Chiurazzi, 97 A.3d at 292 (citation omitted). Thus, although Rite Aid attempts to minimize the import of the legislature's addition of the term "health care provider" to Sections 6152(a) and (c), 6152.1, and 6155(b) of the MRA by noting that the same language was not added to Sections 6151, 6152(b) or (d), 6153, 6154, 6155(a), and 6157, all of which still refer only to health care facility, the fact that the legislature added

---

(…continued)
administering vaccines, pharmacists should be considered providers of health care services, and, therefore, subject to the MRA.

that language in 1998 demonstrates that it envisioned *some* distinction between health care facilities and health care providers.

Determining the legislature's intent as to the meaning of "health care provider" proves to be a more difficult task. Regrettably, the MRA defines neither the term "health care facility," nor the term "health care provider."[15] Further, as the trial court recognized, there is little legislative history with respect to the 1998 amendments to the MRA. See Trial Court Opinion, 5/5/11, at 5. However, observing that Section 6152(a)(1) refers to "any health care provider or an employee of any health care facility licensed under the laws of this Commonwealth," 42 Pa.C.S.A. § 6152(a)(1), Rite Aid suggests the MRA should be construed in *pari materia* with the HCFA, as both statutes relate "to the same persons or things or to the same class of persons or things" − namely, records of health care facilities licensed under the laws of Pennsylvania. Appellant's Brief at 23; see 1 Pa.C.S.A. § 1932. In this regard, Rite Aid contends that the term "health care provider," as contained in the MRA, should be construed in the same manner as the term "health care provider" is defined in the HCFA: "An individual, a trust or estate, a partnership, a corporation (including associations, joint stock companies and insurance companies), the Commonwealth, or a political subdivision or instrumentality (including a municipal corporation or authority) thereof, that *operates* a health care facility." 35 P.S. § 448.103 (as amended in 1992) (emphasis added).

When construing a statute, we must ascertain the intent of our legislature based on the law at the time the statute was enacted or amended. HSP Gaming, L.P. v. City of Phila., 954 A.2d 1156, 1182 (Pa. 2008). At the time of the 1998 amendments to the MRA, several statutes contained definitions of the term "health care provider." As discussed above, pharmacies were not included under the definition of "health care"

_____

[15] The only term expressly defined in the MRA is "Insurer." 42 Pa.C.S.A. § 6160.

provider" in the HCFA. Pharmacies also were not included under the definition of "health care provider" under 40 P.S. § 991.1201 (Uniform Health Insurance Claim Form).[16] Conversely, at the time of the 1998 amendments, pharmacists were included under the definition of "Professional health care provider" contained in the Peer Review Protection Act, 63 P.S. § 425.2,[17] and under the definition of "health care provider" in the Workers' Compensation Act, 77 P.S. § 29.[18]

For the following reasons, we agree with Rite Aid that it is appropriate to construe the MRA in *pari materia* to the HCFA. Pursuant to Section 1932 of the Statutory Construction Act, "[s]tatutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things," and "shall be construed together, if possible, as one statute." 1 Pa.C.S.A. § 1932.

As Rite Aid emphasizes, Section 6152(a)(1) refers to "any health care provider or an employee of any health care facility *licensed under the laws of this Commonwealth*," 42 Pa.C.S.A. § 6152(a)(1) (emphasis added), and it is the Department of Health, under the HCFA, which is responsible for issuing licenses. See 35 P.S. § 448.806(a) ("No

---

[16] See 40 P.S. § 991.1201 (defining "health care provider" as "[a] person, corporation, facility, institution or other entity licensed, certified or approved by the Commonwealth to provide health care or professional medical services. The term includes, but is not limited to, a physician, a professional nurse, a certified nurse-midwife, podiatrist hospital, nursing home, ambulatory surgical center or birth center.").

[17] See 63 P.S. § 425.2 (defining "professional health care provider" as "individuals or organizations who are approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth, including, but not limited to, the following individuals or organizations: . . . (vii) a pharmacist."

[18] See 77 P.S. § 29 (defining "health care provider" as "any person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor or pharmacists and an officer, employe or agent of such person acting in the course and scope of employment or agency related to health care services."

person shall maintain or operate or hold itself out to be a health care facility without first having obtained a license therefor issued by the department. No health care facility can be a provider of medical assistance services unless it is licensed by the department and certified as a medical assistance provider.").

Moreover, the MRA provides specific limits on what a health care provider or facility may charge for the reproduction of medical records, see Chiurazzi,[19] and one of the duties of the Department of Health under the HCFA is to promote cost efficiency and access in the area of health care. See, e.g., 35 P.S. § 448.202;[20] Rehab Hosp. Services Corp. v. Health Systems Agency of Southwestern Pa., 475 A.2d 883, 887 (Pa. Cmwlth. 1984) (noting that, in enacting the HCFA, the legislature clearly was concerned with rising health care costs). Thus, at least one of the goals of both the MRA and the HCFA relates to cost containment in the area of health care.

In contrast, the Peer Review Protection Act pertains to, *inter alia*, the procedure for evaluating "the quality and efficiency of services ordered or performed by other

---

[19] In Chiurazzi, we explained that the language and structure of the MRA "plainly suggests that the pricing schedule serves as a cap on the actual and reasonable expenses of reproduction [of medical records.]" 97 A.3d at 294.

[20] Entitled "Encouragement of competition and innovation," 35 P.S. § 448.202 provides:

> The department shall in its planning and review activities foster competition to promote cost efficiency, quality and access to care. The department shall encourage cooperative health care arrangements which focus on the health care needs of a health planning area and foster the prudent and economical control of the area's resources. The department shall also encourage innovations in the financing and delivery systems for clinically related health services that will promote economic behavior by consumers and providers of clinically related health services that leads to appropriate investment in, supply and use of health services.

35 P.S. § 448.202.

professional health care providers," including individual pharmacists. 63 P.S. § 425.2. Further, as this Court has explained, the Worker's Compensation Act was designed, *inter alia*, to "compensate claimants for earnings loss occasioned by work-related injuries," and "to provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer." Tooey v. AK Steel Corp., 81 A.3d 851, 857 (Pa. 2013) (citations omitted). These statutes are designed to insure the quality of health care services, and to compensate injured individuals, respectively; the focus is not on limiting health care costs.

Thus, upon review of the subjects of the statutes that, in 1998, contained a definition of the term "health care provider," we agree with Rite Aid that the MRA should be construed in *pari materia* with the HCFA. As a result, we interpret the term "health care provider," as contained in the MRA, according to the definition of "health care provider" set forth in the HCFA. Interpreting the MRA's use of the term "health care provider" in this manner, we conclude that pharmacies are not health care providers under the MRA, as they are not entities that operate a health care facility. See 35 P.S. § 448.103.

We recognize, as Appellees argue, that many statutes that concern the release of medical information now specifically include pharmacies within the definition of "health care provider." See, e.g., Pennsylvania eHealth Information Technology Act, 35 P.S. § 510.101 (enacted July 5, 2012) (concerning "consent and confidentiality of health information; and establishing civil immunity under certain circumstances," and expressly including a pharmacy under the definition of "Health Care Provider"); Anatomic Pathology Service Disclosure Act, 63 P.S. § 426.2 (enacted Nov. 23, 2010) (defining "Health care provider" as including, *inter alia*, a physician, hospital, health care facility,

and pharmacist).  However, these statutes were enacted subsequent to the 1998 amendments to the MRA, and, therefore, may not alter our conclusion as to the legislature's intent in 1998.

For similar reasons, we conclude that, even if Appellees are correct that the term "health care provider" means more than just a health care facility or operator thereof, pharmacies do not constitute health care providers under the MRA.  As discussed above, in support of their position that pharmacies constitute health care providers, Appellees rely, in great part, on the fact that pharmacists currently are permitted to administer injectable medications and engage in collaborative drug therapy management.  The Superior Court also recognized these services provided by pharmacies, and further noted that, based on the language used to define the practice of pharmacy under the Pharmacy Act, a pharmacy customer is considered a patient.

It is beyond dispute that there has been a substantial increase in the scope of services offered by pharmacies since the 1998 amendments to the MRA.  However, at the time of the amendments, pharmacists were not authorized to perform the types of health care services identified by Appellees and the court below.  Indeed, it was not until 2002 that pharmacists became authorized to administer injectable medications and vaccines, and it was not until 2010 that pharmacists were permitted to engage in collaborative drug therapy management with licensed physicians in a setting other than an institutional setting.

Additionally, prior to 1998, the "practice of pharmacy" was defined in the Pharmacy Act as follows:

> The practice of that profession concerned with the art and science of the evaluation of prescription orders and the preparing, compounding and dispensing of drugs and devices, whether dispensed on the prescription of a medical practitioner or legally dispensed or provided to a *consumer*,

and shall include the proper and safe storage and distribution of drugs, the maintenance of proper records, the participation in drug selection and drug utilization reviews, and the responsibility of relating information as required concerning such drugs and medicines and their therapeutic values and uses in the treatment and prevention of disease.

63 P.S. § 390-2 (1985) (emphasis added). Thus, at the time of the 1998 amendments to the MRA, a consumer of a pharmacy was not referred to as a *patient* of the pharmacy, and the definition of the practice of pharmacy under the Pharmacy Act did not include "the provision of health care services" or patient counseling. Rather, a pharmacist's duties were limited to the preparation, compounding, dispensing, storage, and distribution of drugs, record maintenance, and the provision of information related to drugs and devices.[21]

As noted above, when construing a statute, we must ascertain the intent of our legislature based on the law at the time the statute was enacted or amended. HSP Gaming, supra. Thus, even under Appellees' proposed construction of the term "health care provider," at the time of the 1998 amendments, pharmacies did not constitute

_____

[21] As discussed supra, the Superior Court relied, *inter alia*, on the use of the term "patient profile" and the requirement that pharmacists offer "patient counseling" under 49 Pa.Code § 27.19 ("Prospective drug review and patient counseling") to conclude that a pharmacist is a health care provider, an individual to whom prescription medication is dispensed is a patient, and the patient pharmacy records maintained by the pharmacist are medical records under the MRA:

> The Code use of the term "patient profile," the requirement that the pharmacist maintain and review the profile, the duty to provide counseling, and the importance of maintaining confidentiality of all information compiled support the conclusion that pharmacy records are medical records of a patient.

Landay, 40 A.3d at 1287. However, the term "patient" is not defined in 49 Pa.Code § 27.1 ("Definitions"), and we are unable to conclude that the term "patient" referred to in the Code means a patient of a pharmacy, as opposed to a patient of a "medical practitioner," which is defined as a "physician, dentist, veterinarian or other individual authorized and licensed by law to prescribe drugs." Id.

"health care providers" for purposes of the MRA. Accordingly, we reverse the decision of the Superior Court.[22]

Order reversed. Jurisdiction relinquished.

Former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Castille and Messrs. Justice Saylor, Eakin, Baer and Stevens join the opinion.

---

[22] In light of our determination that pharmacies are not health care providers for purposes of the MRA, we need not address the issue of whether, or under what circumstances, a pharmacy would be permitted under the MRA to charge a flat fee for the reproduction of records.