Ryan DuBoise,  : 
           Petitioner  : 
            : 
           v.  : 
            : 
Bob Rumcik,  :  No. 566 M.D. 2020
           Respondent  :  Submitted: March 12, 2021

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: May 21, 2021

Before this Court are Bob Rumcik's (Rumcik) preliminary objections (Preliminary Objections), made by and through the Pennsylvania Department of Corrections (collectively, DOC), to Ryan DuBoise's (DuBoise) pro se petition for review in the nature of a complaint in mandamus (Petition) filed in this Court's original jurisdiction. After review, this Court overrules the Preliminary Objections in part and sustains them in part.

## Background[1]

DuBoise is an inmate at the State Correctional Institution at Forest (SCI-Forest). *See Inmate Locator*, PA. DEP'T OF CORR., http://inmatelocator.cor.pa.gov (last visited May 20, 2021). On May 9, 2020, in accordance with DOC's Release of Information Policy No. DC-ADM 003, DuBoise

---

[1] The following facts are as alleged in the Petition.

submitted an executed records release form to Rumcik, SCI-Forest's Custodian of Records, requesting his mental health treatment records from July 1, 2017 to December 20, 2018. *See* Petition ¶ 5; *see also* DuBoise Answer to Prelim. Obj. ¶¶ 23-24 and Ex. A (Declaration). On May 12, 2020, Rumcik denied DuBoise's request, stating that although inmates may review and discuss their mental health records with the psychiatrist, they "are not permitted to possess their mental health records[.]"[2] Petition ¶ 6.

On October 6, 2020, DuBoise filed the Petition, wherein he claims that DOC violated his statutory rights under Section 6155(b)(1) of the act commonly referred to as the Medical Records Act (MRA)[3] and Section 111 of the Mental Health Procedures Act (MHPA)[4] to have DOC release his mental health records. *See* Petition ¶¶ 7-8. DuBoise asks this Court to compel DOC to "disclose his mental health records." Petition at 3; *see also* Petition ¶¶ 9-10.

On November 6, 2020, DOC filed its Preliminary Objections, arguing that DuBoise has no clear right to relief, and the Petition should be dismissed because: (1) a correctional medical facility is not a health care facility, as defined in the Health Care Facilities Act (HCFA),[5] to which the MRA applies (First Preliminary Objection); and (2) DuBoise's treatment was not rendered at a mental health facility governed by the MHPA (Second Preliminary Objection). *See* DOC Prelim. Obj. ¶¶ 20-31.

---

[2] Although DuBoise declares that Rumcik's determination is attached to the Petition as Exhibit A, the determination is not attached thereto. *See* Petition ¶ 4.

[3] 42 Pa.C.S. § 6155(b)(1) (relating to patient rights to records).

[4] Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. § 7111 (relating to record confidentiality).

DuBoise also relies on *Christy v. Wordsworth-at-Shawnee*, 749 A.2d 557 (Pa. Cmwlth. 2000), to support that DOC violated his statutory rights.

[5] Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101-448.904b.

On November 30, 2020, DuBoise filed an answer to DOC's Preliminary Objections. In response to DOC's statement: "Because it has not been clearly established that the MHPA controls [DuBoise's] alleged right of access to his records in these circumstances, his request for mandamus relief should be denied[,]" DOC Prelim. Obj. ¶ 31, DuBoise answered: "Agreed."[6] DuBoise Answer to Prelim. Obj. ¶ 31.

**Discussion**

The law is well settled:

> In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. Any doubt must be resolved in favor of the non-moving party.

*Dantzler v. Wetzel*, 218 A.3d 519, 522 n.3 (Pa. Cmwlth. 2019) (citations omitted).

> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review in the nature of a] complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases

---

[6] In his answer to DOC's Preliminary Objections, DuBoise added that his mental health treatment was provided at SCI-Forest by medical professionals employed by DOC's contractor, Centurion, which is a health care provider subject to the MRA, as defined in the HCFA. *See* DuBoise Answer to Prelim. Obj. ¶¶ 23-24. DuBoise further declared that DOC did not offer him an opportunity to even just review his mental health records. *See id*. Because courts reviewing preliminary objections are limited to considering only the facts pled in the petition for review (complaint) and the documents or exhibits attached thereto, *see Allen v. Dep't of Corr.*, 103 A.3d 365 (Pa. Cmwlth. 2014), this Court may not consider those new facts when determining whether DuBoise stated a claim for which relief may be granted. However, in light of this Court's determination, DuBoise can either seek leave from this Court to amend the petition for review to add those facts, or assert those facts in response to DOC's new matter (if any) to the Petition.

3

where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review in the nature of a] complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). "[C]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review in the nature of a] complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

Moreover,

[t]his Court recognizes:

'The allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys. If a fair reading of the complaint shows that the complainant has pleaded facts that may entitle him to relief, the preliminary objections will be overruled.' *Danysh v. Dep't*[] *of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004) (citation and emphasis omitted), *aff'd*, . . . 881 A.2d 1263 ([Pa.] 2005).

*Dep't of Corr. v. Tate*, 133 A.3d 350, 354 n.8 (Pa. Cmwlth. 2016).

*Freemore v. Dep't of Corr.*, 231 A.3d 33, 37 (Pa. Cmwlth. 2020).

In light of DuBoise's admission that he failed to state a claim pursuant to the MHPA for which mandamus relief can be granted, *see* DuBoise Answer to Prelim. Obj. ¶ 31, this Court sustains DOC's Second Preliminary Objection.

Relative to DOC's First Preliminary Objection, that DuBoise failed to state a claim under the MRA/HCFA for which mandamus relief can be granted, *see* DOC Prelim. Obj. ¶¶ 20-24, this Court has explained:

A writ of mandamus compels the performance of a ministerial and mandatory duty. To prevail in mandamus, the petitioner must demonstrate a clear legal right for performance of an act by the government, a corresponding

4

duty in the government to perform the ministerial act and mandatory duty, and the absence of any other appropriate or adequate remedy. A mandatory duty is 'one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority.' [*Filippi v. Kwitowski*, 880 A.2d 711, 713 (Pa. Cmwlth. 2005)]. Where the public official has discretion in how to perform the act, mandamus may compel the exercise of discretion, but it may not interfere with the manner in which the discretion is exercised. 'A writ of mandamus is an extraordinary remedy,' the purpose of which is 'to enforce rights that have been clearly established. . . .' *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014) (citation omitted).

*Sanders v. Wetzel*, 223 A.3d 735, 739 (Pa. Cmwlth. 2019) (citations omitted).

Here, DuBoise argues that DOC is compelled by Section 6155(b)(1) of the MRA and the HCFA, to allow him to obtain and possess copies of his mental health records.

Section 6155(b)(1) of the MRA provides:

A patient . . . shall have the right of access to his medical charts and records and to obtain photocopies of the same, without the use of a subpoena duces tecum, for his own use. A health care provider or facility shall not charge a patient . . . a fee in excess of the amounts set forth in [S]ection 6152(a)(2)(i) [of the MRA] (relating to subpoena of records).

42 Pa.C.S. § 6155(b)(1). The MRA does not define the terms *health care provider* or *health care facility*. However, the Pennsylvania Supreme Court has ruled relative to those definitions that "the MRA should be construed in *pari materia* with the HCFA." *Landay v. Rite Aid of Pa., Inc.*, 104 A.3d 1272, 1285 (Pa. 2014).

Section 103 of the HCFA defines **health care provider as** "[a]n individual, a trust or estate, a partnership, a corporation (including associations, joint stock companies and insurance companies), **the Commonwealth**, or a political

5

subdivision or instrumentality (including a municipal corporation or authority) thereof, **that operates a health care facility**." 35 P.S. § 448.103 (emphasis added). *Health care facility* **is** defined, in relevant part, therein as

> **any health care facility providing clinically related health services**, including, but not limited to, a general or special hospital, including psychiatric hospitals, rehabilitation hospitals, ambulatory surgical facilities, long-term care nursing facilities, cancer treatment centers using radiation therapy on an ambulatory basis and inpatient drug and alcohol treatment facilities, both profit and nonprofit and **including those operated by an agency or [s]tate** or local **government**. The term shall also include a hospice. . . .

*Id*. (emphasis added).

Although DOC's SCI medical facilities are not specifically listed as *health care facilities* under the HCFA,[7] Section 103 of the HCFA specifies that the definition is "not limited to" the entities listed thereafter, and the *health care facility* definition expressly includes "**any** health care **facility providing clinically related health services** . . . **including those operated by** an agency or [s]**tate** . . . **government**." 35 P.S. § 448.103 (emphasis added).

SCI is defined in Section 102 of the Prisons and Parole Code as "[a] correctional facility, prison or jail **owned or operated by the Commonwealth**." 61 Pa.C.S. § 102 (emphasis added). Further, in accordance with Section 3303 of the Correctional Institution Medical Services Act (CIMSA), 61 Pa.C.S. § 3303, **DOC** established a Prison Medical Services Program that **provides inmate access to medical services and health care professionals**, subject to fees in certain

---

[7] In support of its position that it is not subject to the MRA, DOC refers to a footnote in *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190 (Pa. Cmwlth. 2011), wherein this Court reiterated the Department of Health's argument that SCI medical facilities are not included in Section 103 of the HCFA. However, the Court's recognition of the Department of Health's *argument* therein was not a precedential ruling.

circumstances.[8]  *See* Section 93.12(a) of DOC's Regulations, 37 Pa. Code § 93.12(a); *see also* DOC Policy Nos. 13.1.1 (Management and Administration of Health Care),[9] 13.2.1 (Access to Health Care).  Mental health treatment is included among the medical services DOC provides to inmates.[10]  *See* Section 93.12(b), (d)(6) of DOC's Regulations, 37 Pa. Code § 93.12(b), (d)(6); *see also* DOC Policy No. 13.8.1 (Access to Mental Health Care).

Because SCIs are owned or operated by the Commonwealth and they provide medical services to inmates, it appears that DOC operates *health care facilities* at the SCIs and may be subject to the MRA.  If that is the case, unless

---

[8] Section 3303(g) of CIMSA declares: "Medical services fees collected under this chapter shall be deposited in the General Fund."  61 Pa.C.S. § 3303(g).  Pursuant to Section 302 of the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. § 302, the General Fund is the "fund of money in the State Treasury available for appropriation annually by the General Assembly, as approved by [the] Governor, for general, lawful purposes."  *Pa. Env't Def. Found. v. Commonwealth*, 108 A.3d 140, 145 n.12 (Pa. Cmwlth. 2015), *rev'd in part on other grounds, vacated in part*, 161 A.3d 911 (Pa. 2017).

[9] Section 1.A of DOC Policy No. 13.2.1 (Access to Health Care) specifies that the following medical/mental health/dental services shall be routinely available to every DOC inmate: medically necessary care; emergency services; intake health screening; in-patient care; out-patient care; specialty services; periodic physical examinations; sick call; access to health care for inmates in Restricted Housing Units and Inpatient Mental Health Units; discharge planning services; pharmacy services; and other services (i.e., organ transplants) on a case-by-case basis.  *See* DOC Policy No. 13.2.1 at 1-1 - 1-13. www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/13.02.01%20Access%20to%20He alth%20Care.pdf (last visited May 20, 2021).  This Court "take[s] judicial notice of [DOC] polic[ies] . . . which appear[] on [DOC's] official website[.]"  *Sanders*, 223 A.3d at 738.

[10] According to DOC Policy No. 13.8.1 (Access to Mental Health Care), DOC offers the following mental health services: mental health problem screening; outpatient services for the detection, diagnosis, and treatment of mental illness; crisis intervention and the management of acute psychiatric episodes; stabilization of the mentally ill and the prevention of psychiatric deterioration in the correctional setting; preventative treatment; referral and admission to a licensed mental health unit/facility; and facilities for an offender whose psychiatric needs exceed the treatment capability of the facility.  *See* DOC Policy No. 13.8.1 at 1-2. www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/13.08.01%20Access%20to%20Me ntal%20Health%20Care.pdf (last visited May 20, 2021).

subject to another DOC prohibition,[11] DuBoise may "have the right of access to his medical charts and records and to obtain photocopies of the same . . . for his own use . . . [subject to] . . . a fee [not] in excess of the amounts set forth in [S]ection 6152(a)(2)(i) [of the MRA.]" 42 Pa.C.S. § 6155(b)(1).

Based on the foregoing, this Court cannot declare with certainty that the law will not permit DuBoise to succeed in his mandamus challenge under the MRA. *Dantzler*. Accordingly, this Court overrules DOC's First Preliminary Objection.

## Conclusion

For all of the above reasons, DOC's First Preliminary Objection (relating to the MRA) is overruled, and DOC's Second Preliminary Objection (relating to the MHPA) is sustained.

_____
ANNE E. COVEY, Judge

---

[11] Based solely on the allegations in the Petition, without Rumcik's determination, this Court cannot determine whether a DOC policy affected Rumcik's response. Notwithstanding, DOC policies

> do[] not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. Th[e] polic[ies] should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose[(s)] of the policies of [DOC].

DOC Policy No. 13.1.1 (Management and Administration of Health Care) Section VIII; DOC Policy No. 13.2.1 (Access to Health Care) Section VIII; DOC Policy No. 13.8.1 (Access to Mental Health Care) Section VII.

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan DuBoise,                                              :
               Petitioner                    :
                                     :
         v.                                      :
                                       :
Bob Rumcik,                                               :         No. 566 M.D. 2020
               Respondent                    :

### O R D E R

AND NOW, this 21ˢᵗ day of May, 2021, Bob Rumcik's First Preliminary Objection, made by and through the Pennsylvania Department of Corrections (collectively, DOC), to Ryan DuBoise's (DuBoise) pro se petition for review in the nature of a complaint in mandamus (Petition) is OVERRULED, and DOC's Second Preliminary Objection is SUSTAINED.

DOC is directed to file an answer to DuBoise's allegations as set forth in his Petition which relate to the Medical Records Act, 42 Pa.C.S. §§ 6151-6160, within 30 days of the date of this Order.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan DuBoise,                              :
                         Petitioner        :
                                           :
              v.                           :    No. 566 M.D. 2020
                                           :    Submitted: March 12, 2021
Bob Rumcik,                                :
                         Respondent        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**


**CONCURRING AND
DISSENTING OPINION BY
JUDGE COHN JUBELIRER**                     **FILED: May 21, 2021**

Respectfully, I would explicitly give Ryan DuBoise 30 days to amend his Petition for Review before requiring the Department of Corrections and Bob Rumcik (collectively, DOC) to file an answer thereto. Accordingly, I write separately.

In footnote 6, the Majority recognizes that Mr. DuBoise included facts in his answer to DOC's Preliminary Objections that, while possibly material, may not be considered because they were not included in Mr. DuBoise's Petition for Review. The Majority then indicates that Mr. DuBoise can seek leave from this Court to amend his Petition for Review to include these facts and clarify what the Majority perceives as his "admission."

However, the Court's Order directs DOC to file an answer **without** granting Mr. DuBoise leave to amend. I believe that, especially in light of Mr. DuBoise's status as an incarcerated, pro se litigant, judicial economy is best served by explicitly granting him such leave to amend. This will save both the parties' and this Court's time and resources. Indeed, this Court may have to expend further time and resources in addressing such a motion when this matter could simply be handled by explicitly granting Mr. DuBoise leave to amend in this Order. Further, the Court would be requiring DOC to expend time and resources in drafting and filing an answer that may become irrelevant should the Court grant a motion to amend the Petition for Review. Granting leave to amend to an incarcerated, pro se litigant is **not** telling a party how to plead; rather, it is a prudent and practical course in light of the interests of both judicial economy and the resources and time of the parties before us.

_____

**RENÉE COHN JUBELIRER,** Judge